**Alvin Barnett CLARKE, Appellant,**

v.

**UNITED STATES, Appellee.**
**No. 4775.**

District of Columbia Court of Appeals.

Argued April 14, 1969.

Decided Sept. 17, 1969.

---

Nicholas A. Addams, Washington, D. C., for appellant.

John G. Gill, Jr., Asst. U. S. Atty., with whom David G. Bress, U. S. Atty., Frank Q. Nebeker and Sandor Frankel, Asst. U. S. Attys., were on the brief, for appellee.

Before FICKLING, KERN and GALLAGHER, Associate Judges.

GALLAGHER, Associate Judge:

Appellant was convicted after a jury trial of carrying a deadly weapon, namely, a

straight razor, in violation of D.C.Code 1967, § 22–3204. A sentence of 90 days was imposed, 60 days of which had been served prior to sentencing, for which credit was given. The remaining 30 days of the sentence was suspended. While patrolling at the corner of 18th Street and Columbia Road on March 21, 1968, at approximately 3:45 p. m., Officer Denz was approached by a man who remains anonymous. He was reasonably neatly dressed and articulate, and appeared credible to the officer. He told the officer that "up in front of the Safeway, there on the 1700 block of Columbia Road, three colored males just tried to jostle, or block the path of a girl." He continued, "It looks like they might have tried to rob her." In reply to Officer Denz's question, "Did they rob her?", the man said, "I'm not sure, I don't know, I came to get you." The man then pointed out appellant and his companion standing on the other side of the street in the 1700 block of Columbia Road, about ¾ of a block away.

According to the officer's testimony, he started to walk in the direction of the two men, who began to walk away from him, looking back over their shoulders. After following the men a short distance, Officer Denz raised his radio to call a scout car for assistance. At this point they began to run, turning into an alley off the main street. While running after them the officer radioed: "There are two boys running east on Columbia Road. I want them." The responding scout car passed Officer Denz at the mouth of the alley and after turning into another alley saw the suspects walking at a fast pace. Pulling the scout car across the alley in front of them, the officers left the car with guns drawn, ordered them to "stop", required them to put their hands on top of the car and "frisked" them, discovering a hunting knife in a scabbard on one, and a straight razor

in appellant's pocket. Officer Denz then arrived on the scene, took possession of the weapons and rode in the scout car to the precinct to book appellant and his companion.

Appellant and his companion were tried jointly for carrying dangerous weapons. At trial, the Government presented the testimony of Officers Denz and Guillory. Before the weapons were introduced into evidence, a motion to suppress was offered on behalf of each defendant. After a lengthy hearing at which both officers testified, the trial court denied the motions.

On appeal challenges are made to the denial of the motion to suppress the weapon seized, the presentation to the jury of the question whether the razor was a deadly or dangerous weapon so as to be proscribed by § 22–3204, the propriety of the prosecutor's closing argument, and the action of the trial court in permitting a police officer to be qualified as an expert in weapons.

Appellant's principal contention is that the search which led to his conviction was illegal as it was made pursuant to an arrest without probable cause.

A police officer in the District of Columbia has the power to make a warrantless arrest of a citizen when he has probable cause to believe that the citizen has committed a felony[1] or certain misdemeanors designated by statute.[2] The classic test for probable cause, enunciated by the Supreme Court in Brinegar v. United States, 338 U.S. 160, 175–176, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949), is whether the officer had knowledge of facts and circumstances which would warrant a prudent man in believing that an offense had been committed. The determination depends on the practical considerations of everyday

1. Bailey v. United States, 128 U.S.App. D.C. 354, 389 F.2d 305 (1967). Cf., D.C. Code 1967, § 23–306(a).

2. D.C.Code 1967, § 4–140(b), (c) (1969 Supp. II); D.C.Code 1967, § 23–306(b), (c).

life on which reasonable men act, Brinegar, *supra* at 175, 69 S.Ct. 1302, and the reviewing court is permitted to make its evaluation of reasonableness through the eyes of the arresting officer, and to make allowance for expertise gained through training and experience. Bell v. United States, 102 U.S.App.D.C. 383, 387, 254 F.2d 82, 86, cert. denied, 358 U.S. 885, 79 S.Ct. 126, 3 L.Ed.2d 113 (1958).

When the two men fled up an alley as Officer Denz raised his hand radio to call for scout car assistance, he in effect called for their arrest on sight. At this point, there was a rapidly moving street scene which required a quick decision as to whether to attempt an arrest.

■ Appellant contends that Officer Denz did not believe a felony had been committed as, at best, the passerby had reported a misdemeanor, or an attempted misdemeanor, which had not been committed in the officer's presence. We do not agree, though it must be said that a close question is presented. In our view, the man's report indicated to the officer that appellant and his companion had attempted to rob the girl, which is a felony in this jurisdiction.[3] "Arresting officers are not held to the same strict precision in definition of crimes as is a prosecuting attorney in preparing an indictment." United States v. Gaither, 209 F.Supp. 223, 224 (D.Del. 1962). *See also Bell, supra* at 386–388, 254 F.2d at 85–87. The description given had the earmarks of a standard purse snatching operation.[4] At that time the officer had information sufficient to justify, if not require, "a closer look at [a] challenging [situation] * * *." Dorsey v. United States, 125 U.S.App.D.C. 355, 358, 372 F.2d 928, 931 (1967). Viewing together the citizen's report, the retreat of appellant and his companion and finally, their flight,[5] we believe Officer Denz had probable cause for an arrest.

When the officers in the scout car called to the scene by Officer Denz encountered appellant and his companion in another alley, blocked them off, left the scout car with their guns drawn, and ordered them to "stop", an arrest clearly took place.[6]

■■ The question then arises whether the arrest by the officers in the scout car was justified since their only information concerning the two young men was the request from Officer Denz, the sense of which was to arrest them. Under these circumstances, there is no requirement that the arresting officer have sufficient first-hand knowledge to constitute probable cause. It is enough that the officer initiating the request had probable cause for the arrest. Daniels v. United States, 129 U.S. App.D.C. 250, 393 F.2d 359 (1968). Consequently, though Officer Denz was not yet at the scene and did not make the arrest, it was valid.

■ Since the search resulting in seizure of the weapons was incident to a lawful

3. *See* D.C.Code 1967, § 22–2902. The citizen's report was inconclusive as to whether the offense had been completed.

4. *Cf.* Davis v. United States, 133 U.S.App. D.C. 172, 409 F.2d 458, 460 (1969): "[w]e need not * * * ask [the police] to abandon their experience when they encounter situations which call for the effective intervention they initiated here."

5. *See* Sibron v. New York, 392 U.S. 40, 66–67, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968). *Cf.* Payne v. United States, 111 U.S.App.D.C. 94, 294 F.2d 723, cert. denied, 368 U.S. 883, 82 S.Ct. 131, 7 L.Ed.2d 83 (1961); Bell v. United States, 108 U.S.App.D.C. 169, 280 F.2d 717 (1960); United States v. Washington, 262 F.Supp. 122, 123 (D.C.C.1967).

6. *See* Bailey v. United States, 128 U.S. App.D.C. 354, 357, 389 F.2d 305, 308 (1967). In the instant case, one of the officers testified that if the two young men had not stopped when ordered to do so, he would have taken the necessary action to try to stop them.

arrest, the motion to suppress the weapons at trial was properly denied.[7]

Appellant argues that it was error for the trial court to deny his motion for acquittal on the ground the straight razor was not a dangerous weapon within the purview of D.C.Code 1967, § 22–3204. It has been held by this court in numerous cases that all circumstances surrounding the possession of such an object must be considered in determining whether it is proscribed as a dangerous weapon by that section.[8]

◼ Appellant is correct in his contention that the Government may not rest its case on the mere fact of possession, but must make a showing of some surrounding circumstances which make the object "dangerous." The test is "[whether] the purpose of carrying the object, under the circumstances, is its use as a weapon." Scott v. United States, D.C.App., 243 A.2d 54, 56 (1968). This may be shown by an examination of the time and place the defendant was found carrying it, among other circumstances. Scott, supra at 56. Moreover, in the absence of any explanation from defendant, the conceivable legitimate reasons for carrying such an instrument in that setting are a proper subject of inquiry. Scott, supra at 56. The jury could well have concluded that appellant was not carrying the razor on the street for use "as a tool in [a] certain [trade] or [hobby] or * * * for utilitarian reasons." Scott, supra at 56.

◼ Appellant was carrying the razor in the company of an armed companion in a crowded, commercial area of the city in the late afternoon. He and his companion were apprehended after they ran up an alley at the approach of a police officer investigating a citizen's report concerning them. We think the jury was apprised of circumstances sufficiently probative to allow them to conclude beyond a reasonable doubt that the razor was being carried as a deadly or dangerous weapon in violation of the statute.

Appellant next claims the trial court erred in denying his motions for a mistrial based on prejudicial remarks by the Government during its closing argument and rebuttal. He contends that the Government (1) commented on appellant's failure to testify, and (2) attempted to place the jury in the shoes of victims or likely victims of crime.

◼ The alleged comment on appellant's failure to testify was: "after the Government explains its version of the story to you, the defendants will have an opportunity to explain their version"; and this occurred during the course of the prosecutor's explanation to the jury of courtroom trial procedure. The comment, in context, is fairly read as a reference to appellant's counsel's opportunity to explain the testimony during his argument to the jury, not as a reference to appellant's failure to take the stand.

Appellant's charge that the jurors were placed in the shoes of victims of crime merits closer scrutiny. The prosecutor said the following in arguing the issue whether the razor was a dangerous weapon:

Now, take a look at the circumstances under which they were carrying theirs. *Imagine yourself in those circumstances.* In the middle of a street, a busy street, at a quarter of four on a Thursday afternoon; with a lot of people about; these

7. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), a "stop and frisk" case relied upon by the Government as an alternative support for the search does not apply here, as the arrest occurred prior to the search.

8. *See, e. g.,* Leftwitch v. United States, D.C.App., 251 A.2d 646 (1969); Scott v. United States, D.C.App., 243 A.2d 54 (1968); Degree v. United States, D.C. Mun.App., 144 A.2d 547 (1958).

two men have these two weapons. Imagine yourself waiting for one of those two or three buses—*it could be you—it could be you*—waiting right next to these men and they have these two weapons.

\* \* \* \* \* \*

They are charged with carrying dangerous and deadly weapons. Are these dangerous and deadly weapons that these people should be allowed to walk around in the middle of a street, busy street, at a quarter of four on a Thursday afternoon, *when you ar coming off a bus— when you are coming out of a store— when you are walking down a street?* Do you want people in the District of Columbia to walk around with these, under those circumstances? Thank you. (Emphasis added.)

■ It was wrong for the prosecutor to play on the personal fears of the jury as he did. The United States Court of Appeals has disapproved an instruction to the jury by the trial court which has a tendency to "lead the jury to judge the evidence upon the basis of particular personal experiences \* \* \*." United States v. Jacobs, 134 U. S.App.D.C. —, 413 F.2d 1105 (decided June 25, 1969). As that court has stated, "there are standards which a Government counsel should meet to uphold the dignity of the Government." Taylor v. United States, 134 U.S.App.D.C. —, 413 F.2d 1095 (decided May 1, 1969). The prosecutor's remarks here did not meet those standards.

Where, however, the evidence of guilt is otherwise strong, courts are reluctant to reverse a conviction because of indiscriminate remarks during closing argument. *See, e. g.,* Turner v. United States, 134 U. S.App.D.C. —, — F.2d — (No. 21,443, decided June 3, 1969) ; *Taylor, supra.*

■ As we noted earlier, the jury was apprised of circumstances sufficiently probative to allow them to conclude beyond a reasonable doubt that the razor was being carried as a deadly or dangerous weapon. All things considered, we do not conclude that appellant's conviction turned in any significant degree on these remarks during closing argument and, consequently, no reversal is required.

■ Appellant finally contends that he was prejudiced by the fact that Officer Guillory was permitted to demonstrate the way the razor might be used as a weapon. Such a demonstration was relevant to the issue whether the razor was a "dangerous" or "deadly" weapon. We see no prejudice to appellant.

We have examined the other allegations of error and see no error requiring reversal.

Affirmed.