465 A.2d 823 (1983)
In re S.P., Jr.
No. 82-898.
District of Columbia Court of Appeals.
Argued May 2, 1983.
Decided August 15, 1983.
*824 Thomas C. Devlin, Washington, D.C., appointed by this court, for appellant.
Steven H. Leventhal, Asst. Corp. Counsel, Washington, D.C., with whom Judith W. Rogers, Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on brief, for appellee.
Before KERN and BELSON, Associate Judges, and GALLAGHER, Associate Judge, Retired.
BELSON, Associate Judge:
Appellant seeks a review of a judgment of conviction for carrying a deadly or dangerous weapon, nunchaku sticks, capable of being concealed on or about his person in violation of D.C.Code § 22-3204 (1981). Appellant contends that there was insufficient evidence to support his conviction. We affirm.

I
On May 7, 1982, Metropolitan Police Officer Steven Gilmore and a fellow officer were on patrol in an unmarked police cruiser. As they approached the intersection of 14th and W Streets, N.W., they saw a crowd gathering in the middle of the block. They observed appellant in the midst of the crowd, swinging and twirling around his body what the officers recognized as nunchaku sticks (nunchaku).[1] The two officers *825 lost sight of appellant briefly, but soon saw him walking north on 14th Street, holding the nunchaku in his right hand.
The two officers drove up to appellant, identified themselves and exited the cruiser with their guns drawn, a precaution normally taken when approaching someone with nunchaku. Appellant dropped the nunchaku on the ground. Officer Gilmore asked appellant whether he was taking karate lessons.[2] Appellant answered that he was not. Gilmore then asked appellant whether he knew that carrying the nunchaku was against the law. Appellant responded that he thought it was against the law only "if he had them inside someplace, not outside." Officer Gilmore then arrested appellant.
At trial, Officer Michael Vitug was qualified by the court as an expert in the martial arts and related weaponry. Vitug was highly trained and skilled in the martial arts, and had instructed on them. He testified that although the nunchaku was historically an agricultural tool, it is used now almost exclusively as a weapon in the martial arts. Vitug stated that the nunchaku is used by martial arts experts at sports events in individual demonstrations of dexterity and fitness, but is not used in combative sports because of its capacity to cause great injury or death.
Vitug testified that the nunchaku derives its dangerous and potentially lethal qualities from its design and construction. He noted that the nunchaku can be handled with silence and great speed and that when swung, it becomes a potent offensive weapon. Vitug physically demonstrated how the nunchaku easily can be concealed in an individual's clothing and how it can be used by an expert in demonstrating his proficiency in martial arts weaponry.
Officer Vitug identified the instrument appellant carried as a speedchaku, a variant of the nunchaku, and noted that it was available at many local stores. The speedchaku contains "swivels . . . [with] ballbearings" making it faster when swung. It is also heavier than the usual nunchaku. Vitug testified that the speedchaku is considerably more dangerous than the usual nunchaku. He stated that the only purpose for which a person would be carrying nunchaku on the street would be either for use as a weapon or for transporting it to and from martial arts classes.
Appellant's counsel called one defense witness, appellant's mother. She testified that she had seen appellant and other neighborhood boys using the nunchaku during the previous summer as part of informal physical exercises conducted and supervised by a man she identified as "Doc." She noted that "Doc" showed appellant and other boys how to construct and exercise with the nunchaku, but that this "training" was not focused on the martial arts and was only one of a number of physical exercises which Doc conducted with the boys. Appellant's mother was unable to explain the reasons for or circumstances surrounding appellant's possession and use of the nunchaku at the time of his arrest.
In finding appellant guilty of carrying a dangerous weapon, after a bench trial, the trial judge stated:
Based on the evidence presented the Court finds . . . that your purpose in carrying the nunchakus was its use as a deadly or dangerous weapon. Not to say that you had the specific intent at the time to use the instruments unlawfully against another person but that a description of what you were doing and how you were demonstrating to the people in the crowd, how you twirled them, indicates to me that you knew the purpose of the nunchakus. And, the testimony of the expert witness has been that its use as a weapon is its purpose, and that you knew *826 that as inferred from the manner in which you were demonstrating to others their use.

II
Appellant contends that the evidence presented to the court was insufficient to support conviction for carrying a dangerous weapon in violation of D.C.Code § 22-3204 (1981). Appellant maintains that the government failed to adduce sufficient evidence either that appellant's purpose for carrying the nunchaku was its use as a dangerous weapon or that, under the circumstances, the nunchaku was in fact a dangerous weapon. Appellant asserts that the evidence simply showed that he was demonstrating his proficiency in exercising with the nunchaku, that such use of the nunchaku is identical to its permitted use in sport and the martial arts, and that his conduct did not demonstrate a purpose to use the nunchaku as a weapon against another person.
We are not to set aside the trial court's judgment, except for errors of law, unless we find that it was plainly wrong or unsupported by the evidence. See D.C.Code § 17-305(a) (1981). In assessing appellant's insufficiency claim, we must review the evidence in the light most favorable to the government and give the government the benefit of all reasonable inferences. See In re Q.L.J., 458 A.2d 30, 32 (D.C.1982) (per curiam); Blackledge v. United States, 447 A.2d 46, 49 (D.C.1982). The government is not required to negate every possible suggestion of innocence, and the evidence need only be such that reasonable persons could find guilt beyond a reasonable doubt. In re Q.L.J., supra; Blackledge, supra. Based upon our review of the record, we are satisfied that there was sufficient evidence to support the court's judgment of conviction of appellant.
Section 22-3204 of the D.C.Code provides in relevant part:
[N]o person shall within the District of Columbia carry either openly or concealed on or about his person . . . a pistol, without a license therefore. . ., or any deadly or dangerous weapon capable of being so concealed. . . .
In order to show a violation of § 22-3204, the government must prove beyond a reasonable doubt that the defendant carried either openly or in a concealed manner any deadly or dangerous weapon, that he had the intent to do the acts constituting the carrying of such dangerous weapon, and that the defendant's purpose in carrying the instrument was its use as a dangerous weapon. See Criminal Jury Instructions for the District of Columbia, No. 4.81 (3d ed. 1978); see also Nelson v. United States, 280 A.2d 531, 533 (D.C.1971) (per curiam); Scott v. United States, 243 A.2d 54, 56 (D.C.1968). The government is not required to show a defendant's specific intent to use the instrument unlawfully. Leftwitch v. United States, 251 A.2d 646, 649 (D.C.1969); see also Criminal Jury Instructions, supra.
There was no real dispute as to any issue other than whether appellant's purpose in carrying the nunchaku was its use as a dangerous weapon. In determining whether one's purpose in carrying an object was its use as a deadly or dangerous weapon, the factfinder must consider the circumstances surrounding its possession and use. See Criminal Jury Instructions, supra; see also Clarke v. United States, 256 A.2d 782, 786 (D.C.1969); Scott, supra, 243 A.2d at 56. Such surrounding circumstances include, inter alia, the design or construction of the instrument, see Scott, supra, 243 A.2d at 56; the conduct of the defendant prior to his arrest, see Gilmore v. United States, 271 A.2d 783, 784 (D.C.1970) (per curiam); any physical alteration of the instrument, and the time and place the defendant was found in possession, see Scott, supra, 243 A.2d at 56. In the absence of any explanation from the defendant, the conceivable legitimate reasons for carrying the instrument in the location of his arrest are a proper subject of inquiry. See Clarke, supra, 256 A.2d at 786.
*827 It was undisputed at trial that appellant both intended to and did carry and twirl around his body the nunchaku in the midst of a crowd of onlookers. Officer Vitug's expert testimony established that the particular type of nunchaku found in appellant's possession, the speedchaku, is heavier, more flexible, more difficult to control, and potentially more lethal even in expert hands than an ordinary nunchaku. Furthermore, appellant's mother's testimony established that while appellant had had sporadic informal training in the use of the nunchaku generally as part of a more extensive exercise routine, he had not engaged in any such training for several months before being arrested. Finally, without suggesting that appellant bore any burden of proof in this regard, we note that his failure to testify left the court without his explanation as to any reasons he had for carrying the nunchaku at the time and in the area of his arrest. See Clarke, supra. While it is conceivable that one standing on a public sidewalk would engage in a demonstration of how the nunchaku is used in body building or in the martial arts, there is no record indication that such was appellant's purpose. Moreover, as illustrated by Officer Vitug's answers on cross-examination by appellant's counsel, such streetside demonstrations can well serve the impermissible purpose of intimidating others through exhibition of one's prowess with a lethal weapon.[3] As a result, based upon our review of the record we cannot say the trial court's finding was plainly wrong. Rather, we are satisfied that the court was apprised of circumstances "sufficiently probative" to allow it to conclude beyond a reasonable doubt that appellant was carrying a deadly or dangerous weapon in violation of § 22-3204. See Gilmore, supra, Clark, supra; Scott, supra.[4]
Since we are making a ruling concerning a weapon which apparently has not previously been the subject of any published opinions in this jurisdiction, it is worth making a few further observations about the nunchaku. Like the courts of other jurisdictions, we are cognizant of the cultural and historical background of this Oriental agricultural implement-turned-weapon. We recognize that the nunchaku has socially acceptable uses within the context of martial arts and for the purpose of developing physical dexterity and coordination. Nevertheless, because of the inherent character of the nunchaku as an offensive weapon and its ready commercial availability, as established by the record in this case, we must be cognizant also of its potential for illicit use. In some jurisdictions legislation has been adopted which deals explicitly with the nunchaku.[5] It is for the legislature *828 to determine whether the existing statutory framework makes appropriate provision for the possession or use of nunchaku.
Affirmed.
NOTES
[1] Nunchaku sticks are of Oriental origin and are commonly used in the martial arts. The device consists of two pieces of wood, metal, plastic, or like substance, each approximately one to two feet in length, one end of each of which is connected to one end of the other by a chain, rope, leather or other flexible material.
[2] Gilmore testified that he asked appellant this question because he understood it was normal police practice to allow the carrying of nunchaku to and from karate lessons.
[3] The following exchange took place during appellant's counsel's cross-examination of Officer Vitug:

A. . . . . A lot of people don't know the formal name of the weapon but they know what it can do. You can almost be the bully of the block if you have a pair of nunchakus and you're trying to use it on the street and you're trying to impress somebody. There's a reason.
Q. Or, Officer, you could be the show-off of the block, isn't that correct?
A. But there's a reason for being a showoff. You want to say to people, "Hey, I have nunchakus. I use them. I know how to use them. Don't mess with me or I'll knock your block off."
[4] We find inapposite the cases from other jurisdictions cited by appellant which have held that nunchaku were not per se dangerous weapons within the general sweep of particular statutes which specify weapons the mere possession of which is a felony or misdemeanor and include by general reference other similar weapons. See State v. Muliufi, 64 Hawaii 485, 643 P.2d 546 (1982) (per curiam); Commonwealth v. Adams, 245 Pa.Super. 431, 369 A.2d 479 (1976); cf. State v. Tucker, 28 Or.App. 29, 558 P.2d 1244 (1977). As we have discussed, it is not simply possession of, but rather the use of an instrument and the circumstances surrounding its use which render it dangerous for purposes of § 22-3204. See Clarke, supra; Scott, supra; see also Criminal Jury Instructions, No. 4.81, supra.
[5] In Maryland, for example, legislation has placed it in the same category as switchblade knives and metal knuckles, and no purpose to use it as a weapon need be shown in order to establish a violation. 3A Md.Ann.Code art. 27, § 36 (1982). Although under D.C.Code § 22-3214(b) certain weapons are similarly classified, the nunchaku is not so classified.