Derrick T. JOHNSON, Appellant,

v.

UNITED STATES, Appellee.

Charles A. WILLIAMS, Appellant,

v.

UNITED STATES, Appellee.

Nos. 85–707, 85–891.

District of Columbia Court of Appeals.

Submitted Dec. 1, 1987.
Argued March 1, 1988.
Decided May 19, 1988.

Dennis M. Hart, Washington, D.C., was on the brief, for appellant Johnson.

R. Kenneth Mundy, with whom Patrick J. Christmas, Washington, D.C., was on the brief, for appellant Williams. W. Gary Kohlman, Washington, D.C., also argued the case for appellant Williams.

Edward C. McGuire, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., at the time the brief was filed, Michael W. Farrell and Mary Ellen Abrecht, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before FERREN, ROGERS and STEADMAN, Associate Judges.

ROGERS, Associate Judge:

In these appeals from their convictions [1] by a jury after a ten day trial, appellants assign a number of errors as requiring reversal. They contend that (1) the trial judge erred in communicating *ex parte* when he directed a witness to return to

---

1. Appellants were convicted of assault with intent to kill while armed, D.C.Code § 22–501 & –3202 (1981 & 1987 Supp.). In addition, appellant Williams was convicted of assault with a dangerous weapon, *id.* § 22–502, and with obstruction of justice, *id.* § 22–722(a)(3), and appellant Johnson was convicted of carrying a pistol without a license, *id.* § 22–3204.

court and excused a juror, (2) the trial judge erred in denying their motions to dismiss the indictments for violation of the right to an independent grand jury, and (3) the prosecutor improperly used grand jury testimony to impeach a witness without leave of court. They also contend that reversal of their convictions is required because of prosecutorial and judicial misconduct, violation of the government's obligation under *Brady*,[2] and abuses of discretion by the trial judge in denying a motion to sever and in evidentiary rulings concerning the direct examination of government witnesses. Finding no reversible error, we affirm.

## I

The charges against appellants arose out of a shooting in the vicinity of the Manhole Club in southeast Washington, D.C. on March 11, 1983. James Short and another man had purchased heroin which they discovered produced no effect and sought to get their money back. Upon being informed of their complaint, appellant Williams said that someone would take care of the problem. Williams went into the club, returned to the street and thereafter made a telephone call. Suddenly, two men jumped Joseph Short, James' brother, who was standing nearby. When James attempted to help his brother, Williams pulled a gun on James and told him to "hold it." James reacted by pulling out his own gun and next saw Joseph lying on the ground with two men standing over him. A woman shouted "Shoot the motherfucker." James heard a shot and saw appellant Johnson, Williams' son, pointing a gun at a forty-five degree angle at Joseph. Johnson then fled. Williams remained at the club and later threatened a friend of one of the witnesses about talking to the police about the incident.

Numerous other people witnessed the fight and shooting, four of whom testified for the government, including Rose Johnson and Tanya Jones. A detective confirmed that three other people also had identified appellants. Ronald Williams, an-

other son of appellant Williams, testified that he was unable to recall the details of his conversation with appellant Johnson after the shooting and claimed that he did not recall his testimony before the grand jury that Johnson had admitted his involvement in the shooting.

Appellants presented alibi defenses— Williams, that he was inside the Manhole Club, and Johnson, that he was at home with friends at the time of the shooting. Timothy Williams, another of appellant Williams' sons, testified that he had been struggling with Joseph Short when a gun was fired and that he had seen James Short loading his gun and heard him tell Joseph to shoot him. Another defense witness corroborated this testimony but also testified that she saw Joseph Short pull a gun from his waist while he was struggling with Timothy Williams. Appellant Williams testified that he was inside the Manhole Club when he heard a commotion outside and denied any involvement in the incident. Appellant Johnson did not testify. Three other defense witnesses testified that Johnson was at his home with them on March 11, 1983, a date they recalled because a friend of theirs had died. In rebuttal the government presented evidence that their friend had died six days later.

## II

*Ex Parte Communications.* Appellants contend that their right to a fair trial was violated by *ex parte* communications by the trial judge. At the end of the third day of trial, the prosecutor asked to approach the bench *ex parte* about a witness problem while both appellants and their counsel were in the courtroom and the proceedings were still on the record. Appellant Johnson's attorney affirmatively asked to be excused. At the prosecutor's request, the judge instructed Ronald Williams, a reluctant government witness, to appear in court the following morning. No contemporaneous record was made of the judge's conversation with the witness. The next day of trial, following an inquiry by defense counsel, the judge stated the sub-

stance of his conversation with the witness on the record. After the trial judge had informed appellants and their counsel about the communication, neither appellant lodged any objection on the basis of the trial judge's communication with the witness.

■ It is axiomatic that "[a]ny discussion with the trial judge relating to the trial should be conducted only in the presence of all counsel." *Clifton v. United States*, 363 A.2d 299, 301 (D.C.1976). A defendant has a right to be present at all stages of the trial. Super.Ct.Crim.R. 43; *see Gary v. United States*, 499 A.2d 815, 835 (D.C. 1985) (en banc) (voir dire), *cert. denied*, 475 U.S. 1086, 106 S.Ct. 1470, 89 L.Ed.2d 725 (1986); *Boone v. United States*, 483 A.2d 1135, 1139 (D.C.1984) (en banc) (voir dire). In the instant case all counsel should have been present during at least the initial stage of the conversation between the judge and the prosecutor so that defense counsel would have been aware of the general nature of the request before the judge acted. *See Smith v. United States*, 389 A.2d 1356, 1361 (D.C.) (per curiam), *cert. denied*, 439 U.S. 1048, 99 S.Ct. 726, 58 L.Ed.2d 707 (1978). As to later stages of the conversation, defense counsel could have been excluded only if the trial judge was convinced of the legitimacy of the government's need to keep the identity of the witness to be admonished secret from the defense. *See Davis v. United States*, 315 A.2d 157, 161 (D.C.1974) (government has no duty to disclose its witness list absent statutory or constitutional requirement). The trial judge also should have taken steps to assure that an official record of his meeting with the prosecutor and the witness was made, and, if necessary, should have ordered the record to be placed under seal, so there would be a record available for judicial review. *Cf. United States v. Gagnon*, 470 U.S. 522, 524, 105 S.Ct. 1482, 1483, 84 L.Ed.2d 486 (1985).

■ Here, with only the prosecutor present, and without awareness by defense counsel of even the nature of the prosecutor's request, the judge admonished the witness to appear in court the next day to fulfill his obligation to testify. However, we conclude that the error was harmless beyond a reasonable doubt. *See Winestock v. United States*, 429 A.2d 519, 529 (D.C.1981); *United States v. Washington*, 227 U.S.App.D.C. 184, 193, 705 F.2d 489, 498 (1983) (FED.R.CRIM.P. 43). Appellants do not allege, nor is there any evidence to suggest, that anything more occurred than was disclosed by the trial judge. Defense counsel's objection that the police had deprived appellants of their right to communicate with the witness is unsupported by the record. Although the witness was under the protection of the police the night before he testified—he had been threatened by appellant Johnson—there is no evidence that he was ever told he could not discuss the case with defense counsel if he so desired. Nor has there been any showing that the government at any time instructed the witness not to cooperate with the defense. Absent a "clear showing that the government instructed the witness not to cooperate with [appellants]," *Matter of B.L.B.*, 432 A.2d 722, 725 (D.C.1981) (quoting *United States v. McDougald*, 350 A.2d 375, 377 (D.C.1976)), appellants are not entitled to relief.

■ Johnson also complains about a second *ex parte* communication when the trial judge excused a juror without first notifying appellants. The record reflects that the juror's mother had died during a weekend recess of the trial, that the trial judge promptly notified appellants when the trial resumed that he had excused the juror, and that no objections were made. *See Gagnon, supra*, 470 U.S. at 526, 105 S.Ct. at 1484 (quoting *Rushen v. Spain*, 464 U.S. 114, 118, 104 S.Ct. 453, 455–56, 78 L.Ed.2d 267 (1983)). Under these circumstances, we find no basis on which to conclude that Johnson's right to a fair trial was prejudiced, *see Roberts v. United States*, 402 A.2d 441, 443 (D.C.1979) (per curiam), and hold that the error, being facially benign, was harmless beyond a reasonable doubt. *See Winestock, supra*, 429 A.2d at 529.

## III

■ *Independent Grand Jury; Rule 6.* Appellant Johnson also argues that the tri-

al judge erred in denying his motion to dismiss the indictment for the government's failure to comply with Super.Ct. Crim.R. 6. At the time of appellants' indictments, Rule 6 prohibited the disclosure of matters occurring before a grand jury except under specifically enumerated circumstances or "when so directed by an order of a court within the District of Columbia." Super.Ct.Crim.R. 6(e)(3)(C)(i). Although it was error for the government to present evidence from one grand jury to another grand jury without first obtaining court permission, the error was harmless in the absence of any showing of abuse.

Rule 6 of the D.C. Superior Court was amended in 1985, following a similar amendment to the Federal Rules of Criminal Procedure, to permit disclosure of grand jury proceedings "[w]hen the disclosure is made by an attorney for the government to another grand jury in the District of Columbia...." Super.Ct.Crim.R. 6(e)(3)(C)(iii). *See* D.C. Code § 11–946 (1981). Even before the amendment, however, courts have permitted disclosure in some circumstances. *See, e.g., United States v. Malatesta,* 583 F.2d 748, 753–54 (5th Cir.1978), *cert. denied,* 444 U.S. 846, 100 S.Ct. 91, 62 L.Ed.2d 59 (1979); *see also* FED.R.CRIM.P. 6 advisory committee note (1983). A prosecutor may use a transcript of a witness' prior sworn grand jury testimony in a later, separate grand jury proceeding, *Miles v. United States,* 483 A.2d 649, 654 (D.C.1984), and is under no obligation to present to a grand jury all available exculpatory information. *Id.* at 654–55. Since all of the purportedly exculpatory evidence was presented in the instant case to a petit jury, which returned a guilty verdict on all counts, we conclude that the government's failure to comply with Rule 6 was harmless error. *See Carrado v. United States,* 93 U.S.App.D.C. 183, 188, 210 F.2d 712, 718 (1953) (quoting *United States v. American Medical Ass'n,* 26 F.Supp. 429, 430–31 (D.C.1939)), *cert. denied,* 350 U.S. 938, 76 S.Ct. 310, 100 L.Ed. 819 (1956).

**3.** Williams has not raised this issue on appeal.

## IV

*Government use of grand jury testimony.* Johnson contends that the trial judge erred in failing *sua sponte* to prevent the prosecutor from using Ronald Williams' grand jury testimony to impeach him, failing to give an immediate cautionary instruction, and instructing the jury in the final charge that the grand jury testimony could be used as substantive evidence. The government concedes error in the impeachment procedure because the prosecutor neglected to obtain leave of court, but argues that the error did not amount to plain error. *Watts v. United States,* 362 A.2d 706, 709 (D.C.1976) (en banc).

■ It was also error for the trial judge to instruct the jury, in the circumstance of a party's impeachment of its own witness, that it could consider prior inconsistent statements, even those made under oath at a grand jury proceeding, as evidence of any fact contained in those statements. D.C. Code § 14–102 (1981); *Gordon v. United States,* 466 A.2d 1226, 1230–31, 1232 & n. 2 (D.C.1983) (prior inconsistent statements made before grand jury cannot be used as substantive evidence but only to evaluate the witness' present truthfulness). At trial, the prosecutor sought to introduce into evidence a redacted portion of Ronald Williams' grand jury testimony, which had been used for impeachment purposes, and requested an instruction limiting the jury's consideration of this evidence to credibility. The trial judge, mistakenly referring to a standard instruction intended for use in the federal district court, *see* comment following Criminal Jury Instructions for the District of Columbia, No. 1.06 (3d ed. 1978), suggested that prior inconsistent statements made under oath at a grand jury proceeding could be considered for their substantive content. Williams objected on the grounds that he could not see how the jury would benefit from having access to the written transcript.[3] Johnson objected on the grounds that it was unclear which grand jury had heard the testimony, see Part III, *supra,* and that no part of the grand jury testimony concerned the shoot-

ing at issue. The prosecutor pointed to several questions and answers in the grand jury testimony that specfically related to the charged shooting, and then agreed with the trial judge that standard criminal jury instruction No. 1.06 would permit the grand jury testimony to be considered as substantive evidence. The trial judge then admitted the grand jury transcript into evidence and later gave the erroneous instruction. Since Johnson did not object to the instruction on the grounds that it improperly permitted the jury to consider the grand jury testimony for its substantive content, our review is limited to plain error, *Watts, supra,* 362 A.2d at 709, and we find none.

The government's case was very strong. Four eyewitnesses, who were all in excellent position to view the events, identified Johnson as the person who shot the victim. Johnson's alibi defense was completely undermined by the government's rebuttal evidence that Johnson's friends were mistaken about the date the shooting occurred. Johnson also used the grand jury transcript in his cross-examination of Ronald Williams. Moreover, Ronald Williams' testimony was merely cumulative evidence of Johnson's involvement in the shooting. In view of the strong eyewitness testimony, the absence of any credible evidence contradicting the identifications, and in the absence of defense objection, we hold that the very fairness of the trial was not jeopardized by the manner of impeachment or by the instruction to the jury.[3A] *See Stewart v. United States,* 490 A.2d 619, 625 (D.C.1985); *Beale v. United States,* 465 A.2d 796, 803 (D.C.1983), *cert. denied,* 465 U.S. 1030, 104 S.Ct. 1293, 79 L.Ed.2d 694 (1984).

### V

Appellants' remaining assignments of error require only brief comment.

■ **A.** *Brady Violation.* Johnson's claim that his rights under *Brady v. Maryland, supra* note 2, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215, were violated is meritless. *Brady* material consists of "exculpatory information, material to a defendant's guilt or punishment, which the government knew about but failed to disclose to the defendant in time for trial." *Lewis v. United States,* 393 A.2d 109, 114 (D.C.1978), *aff'd after reh'g,* 408 A.2d 303 (D.C.1979) Johnson argues that the prosecutor failed to comply with the obligation imposed by *Brady* by not volunteering before trial information concerning misidentifications by government witnesses and exculpatory grand jury testimony by defense witnesses. Since Johnson received the information about misidentifications by government witnesses in time to effectively use it at trial, there is no *Brady* violation. *See Wiggins v. United States,* 386 A.2d 1171, 1173–74 (D.C.1978); *see, e.g., United States v. George,* 778 F.2d 556, 561 (10th Cir.1985) (defendant received exculpatory information after first day of trial but in sufficient time to cross-examine government witnesses and work it into defense). The failures of two witnesses (whom the government could not locate for trial) to identify appellants were also disclosed during trial and brought out in Johnson's cross-examination of the detective. In any event, there is no reason to believe that these witnesses could exculpate Johnson because the mere failure of a witness to make an identification is not exculpatory. *See United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 3384, 87 L.Ed.2d 481 (1985) ("evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different"); *see also United States v. Rhodes,* 569 F.2d 384, 388 (5th Cir.) (inability to identify is "of a neutral nature"), *cert. denied,* 439 U.S. 844, 99 S.Ct. 138, 58 L.Ed.2d 143 (1978); *United States v. Palmer,* 536 F.2d 1278, 1281 (9th Cir.1976) (inability to identify is not exculpatory).

**B.** *Prosecutorial Misconduct.* Appellants contend that some of the prosecutor's

---

**3A.** Williams did not raise this issue in his briefs but requested at oral argument that he be permitted to incorporate the argument in Johnson's brief. For reasons similar to those noted regarding Johnson's argument, we conclude that the fairness of Williams' trial also was not jeopardized by the impeachment or jury instruction.

opening remarks were unsupported by the evidence and others were so prejudicial as to require reversal of their convictions. Both complain that the opening statement unfairly linked them to drug trafficking. Inferences drawn from James Short's testimony, however, clearly supported the prosecutor's opening remarks. *Tuckson v. United States*, 364 A.2d 138, 142 (D.C. 1976); *see Fornah v. United States*, 460 A.2d 556, 559 (D.C.1983). Williams' contention that the prosecutor's characterization of the shooting as "execution-style, in the head with a gun, like a dog in the street" [4] was improper is meritless. Assuming that the comment was misconduct, it did not rise to the level of substantial prejudice given the strength of the government's case and the remark's unrelatedness to guilt or innocence. *Hammill v. United States*, 498 A.2d 551, 555–56 (D.C.1985); *Sherrod v. United States*, 478 A.2d 644, 655 (D.C.1984). His complaint about the prosecutor's references to him as "Big Charles" is meritless given the testimony differentiating Williams and his son by use of that appellation. *See Mathis v. United States*, 513 A.2d 1344, 1348 (D.C.1986) (misconduct in prosecutor's repeated use of term "the Godfather"). Likewise, Johnson's complaint that the prosecutor referred to him as the "enforcer" is without merit in light of the evidence of his role in the shooting.

█ The government concedes on appeal, as it must, that the prosecutor acted improperly when he asked the jury to "put yourself in that same situation", in referring to a witness' reluctance to testify. *Clarke v. United States*, 256 A.2d 782, 787 (D.C.1969); *see Jones v. United States*, 512 A.2d 253, 261 (D.C.1986). We find no substantial prejudice, *Clarke, supra*, 256 A.2d at 787, however, in view of the trial judge's instructions, at the close of the prosecutor's opening remarks as well as during trial and in the final charge to the jury, that the statements and arguments of counsel are not evidence.

Johnson's other complaints, that the prosecutor offered his personal opinion about how various witnesses would testify and that there was no testimonial evidence at trial to support the prosecutor's statement that Johnson passed his pistol to Williams before fleeing the scene, are meritless. The prosecutor simply stated that the government witnesses would fulfill their obligation to testify truthfully under oath. Rose Johnson testified that she saw a big black man take a pistol from appellant Johnson's hand and tell him to go down the street and said the big black man was either appellant or another man in a lineup photograph. The testimony of the other eyewitnesses did not provide better testimony on this point. Thus, the issue was for the jury, and appellants were entitled to comment on this failure of proof in their closing arguments. Reversal of their convictions is unwarranted. *Frazier v. Cupp*, 394 U.S. 731, 736, 89 S.Ct. 1420, 1423, 22 L.Ed.2d 684 (1969).

█ C. *Evidentiary Rulings.* Appellants' contentions on various rulings concerning the testimony of several government witnesses are largely without merit. The detective's testimony was properly admitted to place Ronald Williams' testimony about his reluctance to testify in context. *Troublefield v. United States*, 125 U.S. App.D.C. 339, 343, 372 F.2d 912, 916 (1966). Johnson's statement to the detective that he would not let Ronald Williams testify against him was admissible as probative evidence of consciousness of guilt, *Gale v. United States*, 391 A.2d 230, 235 (D.C. 1978), *cert. denied*, 439 U.S. 1133, 99 S.Ct. 1057, 59 L.Ed.2d 96 (1979), and was responsive to appellants' efforts in their cross-examination of Ronald Williams to establish that the authorities had no reason to be concerned about his safety. *Sherrod, supra*, 478 A.2d at 653; *Smith v. United States*, 312 A.2d 781, 785 (D.C.1973). The trial judge did not abuse his discretion in admitting testimony to explain and place in

---

**4.** The government contends that our review of this particular remark should be limited to plain error. Although the trial transcript arguably supports this position, we will assume for purposes of our analysis that appellants' nearly immediate objection was sufficient to preserve review for harmless error.

context certain initial misidentifications and failures to identify by witnesses who subsequently identified appellants. *United States v. Mosby,* 495 A.2d 304, 305 (D.C. 1985).[5]

 Johnson also contends that the trial judge abused his discretion by permitting Rose Johnson, over objection, to explain her recognition of him in part from a prior robbery.[6] The trial judge apparently permitted the prosecutor to question Rose Johnson about the robbery incident for the purpose of bolstering Rose Johnson's qualification as an identification witness. The trial judge instructed the jury contemporaneously, and in his final charge, to consider the mention of another crime solely in evaluating Johnson's identification and not on the issue of guilt. Assuming it was error to allow this testimony to stand, even for the limited purpose of establishing identity, *see Harris v. United States,* 366 A.2d 461, 463 (D.C.1976) (identity exception is not by itself sufficient to allow uncharged offenses to be used to bolster the qualifications of a witness who proffers an identification), we conclude that the error did not rise to the level of substantial prejudice. *Id.* at 464.[7]

Accordingly, the judgments are affirmed.

---

5. Appellant Williams also contends, for the first time in his supplemental brief on appeal, that the prosecutor impermissibly commented on the defendant's failure to testify when he objected to a question asked during defense counsel's cross-examination of Joseph Short. Viewed in context, the prosecutor objected to the question because it called for an answer not within the personal knowledge of the witness, and cannot be reasonably construed as "manifestly intended or ... of such character that the jury would naturally and necessarily take it to be comment on the failure to testify." *Watts v. United States,* 449 A.2d 308, 312 (D.C.1982) (quoting *Byrd v. United States,* 364 A.2d 1215, 1218 (D.C.1976)).

6. Rose Johnson's statement that she also recognized Johnson in part from an attempted rape was stricken in response to his objection.

7. Appellants' other contentions are meritless. Williams' contention that he was denied a fair trial because the trial judge repeatedly criticized defense counsel is unpersuasive. None of the judge's remarks, either individually or in their totality, were sufficiently prejudicial to warrant reversal. *Khaalis v. United States,* 408 A.2d 313, 353 (D.C.1979), *cert. denied,* 444 U.S. 1092, 100 S.Ct. 1059, 62 L.Ed.2d 781 (1980). None of the admonitory remarks to counsel suggested a judicial bias or opinion on the merits of appellant's case, *Oesby v. United States,* 398 A.2d 1, 10 (D.C.1979), and many were reasonable attempts to curb counsel's efforts to elicit irrelevant testimony. *Rosenberg v. District of Columbia,* 66 A.2d 489, 490 (D.C.1949). The trial judge also instructed the jury to ignore his actions and comments in determining appellants' guilt or innocence. *See Randall v. United States,* 353 A.2d 12, 14 (D.C.1976).

Johnson's contention that the trial judge abused his discretion in denying a motion to sever is without merit. *Tillman v. United States,* 519 A.2d 166, 169–70 (D.C.1986). Neither appellant implicated the other in the commission of the assault with intent to kill while armed. *See Ready v. United States,* 445 A.2d 982, 987 (D.C. 1982), *cert. denied,* 460 U.S. 1025, 103 S.Ct. 1279, 75 L.Ed.2d 498 (1983). Johnson's claim that he was prejudiced by testimony about a conversation between appellant Williams, his lawyer and James Short is meritless since there was no mention in the conversation of Johnson's involvement in the shooting. Nor was a severance required because Johnson needed to call appellant Williams' trial counsel as a witness to testify about the conversation; Williams and a man named Pernell Roberts, who was present during the conversation, were available for questioning about the conversation. Finally, Johnson's claim of prejudice with respect to his alibi defense presented by witnesses called by Williams is without merit.