**Richard MONROE, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 88–434.

District of Columbia Court of Appeals.

Argued June 17, 1991.

Decided Oct. 31, 1991.

Richard Tillman Moore, appointed by this court, for appellant.

Martin D. Carpenter, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., and John R. Fisher, Thomas C. Black and Odessa F. Vincent, Asst. U.S. Attys., were on the brief, for appellee.

Before STEADMAN and SCHWELB, Associate Judges, and REILLY, Senior Judge.

STEADMAN, Associate Judge:

Appellant was convicted by a jury of carrying in a public place a deadly or dangerous weapon; specifically, a 10¼ inch knife, D.C.Code § 22–3204 (1981),[1] and received a suspended 120–day sentence and probation. He argues the evidence was insufficient to show a present intent to use the knife as a dangerous weapon. We disagree and therefore affirm.

**I**

The government's evidence showed the

---

1. The section provides in pertinent part:
    No person shall within the District of Columbia carry either openly or concealed on or about his person, except in his dwelling house or place of business or on other land pos- sessed by him, a pistol, without a license therefor issued as hereinafter provided, or any deadly or dangerous weapon capable of being so concealed....

following.[2] Appellant entered the Longworth House Office Building and approached the security station area, stating that he wished to leave his briefcase because it could not pass through the x-ray equipment. Appellant stated: "I have weapons in my bag." One of the three United States Capitol Police Officers involved in the incident, Sergeant Edward F. Lopez, thereupon immediately directed appellant into a nearby office, ordering appellant to place the briefcase on the floor because he feared appellant could use the weapons. According to Lopez, appellant said he had a "K–Bar–Nine [knife], a pair of brass knuckles and handcuffs in the bag." The unlocked bag was opened and found to contain a knife near the top and within easy reach, and handcuffs, but no brass knuckles.[3]

Considerable conversation took place between the officers and appellant as to why appellant was carrying these items, from which a jury could conclude that appellant carried them for two purposes.[4] According to the officers, appellant said that "I use those in my work in that I'm a bodyguard and that I have come up here for the purposes of having Congressman Fauntroy help me with a letter that I'm writing seeking employment to work with Jesse Jackson as a bodyguard for the Reverend Jackson."[5] He also said: "I use it [the knife] to defend myself" and "for protection." He acknowledged that he "knew how to use weapons" and "was prepared to use the weapons that he carried." As the final government witness put it on redirect examination:

Q. What, if anything, did he tell you he wanted to use the weapon for?

A. He said he wanted to use it for protection.

Q. Did he tell you he wanted to use it for anything else?

A. And to use it as a—employment as a bodyguard, use it as a weapon as a bodyguard.

## II

In order to prove a violation of D.C.Code § 22–3204, the government must show that a defendant "(1) carried [on or about his person] in an open or concealed manner a dangerous weapon [capable of being so concealed], (2) intended to do the acts constituting carrying the weapon, and (3) intended to use the object as a dangerous weapon." *Strong v. United States*, 581 A.2d 383, 385–86 (D.C.1990) (citation omitted). There is no serious dispute raised by appellant about the first two elements of the offense. Appellant's claim is that there was no evidence that he had a "present intent" to use the knife as a dangerous weapon.[6]

■ "In determining whether one's purpose in carrying an object was its use as a deadly or dangerous weapon, the factfinder must consider the circumstances surrounding its possession and use." *In re S.P.*, supra note 4, 465 A.2d at 826. *See Scott v. United States*, 243 A.2d 54, 56 (D.C.1968); *Pollen v. United States*, 207 A.2d 114, 115 (D.C.1965) ("Whether a knife is a danger-

---

**2.** The government offered the testimony of three police officers. Appellant presented no defense.

**3.** The government offered evidence that the knife was "ten and one-quarter inches long" and "the blade was six and one-eighth inches in length," and the knife itself was introduced as an exhibit. There was no explanation of any significance in the "K–Bar–Nine" designation.

**4.** Our standard in dealing with such evidence is well-known. "[W]e must review the evidence in the light most favorable to the government and give the government the benefit of all reasonable inferences. The government is not re-

quired to negate every possible suggestion of innocence, and the evidence need only be such that reasonable persons could find guilt beyond a reasonable doubt." *In re S.P.*, 465 A.2d 823, 826 (D.C.1983).

**5.** Appellant displayed no protective service occupational credentials other than an outdated Smithsonian Institution Special Police Guard badge.

**6.** The jury was given the standard jury instruction that a "'deadly or dangerous weapon' is one which is likely to produce death or great bodily injury." CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA, No. 4.81 (3d ed. 1978).

ous weapon depends upon the circumstances in each case"). "Such surrounding circumstances include, *inter alia,* the design or construction of the instrument, *see Scott, supra,* 243 A.2d at 56; the conduct of the defendant prior to his arrest, *see Gilmore v. United States,* 271 A.2d 783, 784 (D.C.1970) (per curiam); any physical alteration of the instrument; and the time and place the defendant was found in possession, *see Scott, supra,* 243 A.2d at 56." *In re S.P., supra* note 4, 465 A.2d at 826. There is no requirement, however, that a defendant evidence a specific intent "to use a knife for an unlawful purpose...." *Scott, supra,* 243 A.2d at 56; *United States v. Shannon,* 144 A.2d 267 (D.C.1958).

■ Appellant's own and only expressed purposes with respect to the knife were to defend himself, for protection, and in work as a bodyguard. A reasonable juror could have found that the design of the knife (over ten inches long with a blade over six inches), the time, place, and conduct of appellant in bringing the knife into a government office, appellant's failure to state to the officers any other purpose for carrying the weapon but its use as a weapon, and evidence that appellant knew how and was prepared to use the knife as a

weapon, all combined to justify the conclusion that appellant's intent in carrying the knife was for use as a dangerous weapon.

Appellant's argument, at bottom, rests on the proposition that when he was arrested, he could not have had any intent to use the weapon at that moment as a dangerous weapon, since he was in fact attempting to check the weapon with the Capitol Police.[7] It is true that cases often contain elements suggesting an intent to make immediate use of the dangerous weapon, such as where the defendant attempted to conceal or dispose of the weapon, *see Scott, supra,* or where the defendant was engaging in some other potentially unlawful or at least suspicious behavior when the officer came upon him, *see In re S.P., supra* note 4. But the importance of such circumstances goes to the proof of intent, not to the exact moment of its potential exercise.[8] Neither the statute nor the jury instructions here, to which appellant has raised no objection, limits the scope of the offense to cases where the appellant's intent relates to the instant use of the weapon. Although appellant was attempting to check the knife when arrested, his statements permitted the inference that he was prepared to use it, should the occasion arise, both prior to entering and, after retrieving the briefcase, immediately upon leaving the Longworth Building.[9] In sum, we see no basis for acquittal based on insufficient proof of a

---

7. Appellant styles this argument in his brief as a contention that from the moment appellant "formed an intention to give his briefcase to the officers on guard, that knife lost whatever character it may ever have had as a dangerous weapon." Another way of framing the same proposition, as advanced at oral argument, is to maintain that when appellant "checked" the knife he necessarily abandoned the intent to use it as a weapon at present. However, this does not mean appellant ever abandoned the present intent to reclaim the weapon and to use it as such immediately following his visit to Fauntroy.

A possibility of confusion exists in the term "present intent." It may refer to the existing intention in a person's mind with respect to future conduct ("I intend to leave early today") or an existing intention relating to a contemporaneous or near-contemporaneous act ("I intend to make you a present. Here is $100.")

8. *Cf. Commonwealth v. Thompson,* 15 Mass. App. 974, 446 N.E.2d 746 (1983) (conviction

upheld for carrying steak knife in pocketbook for "protection"); *Schaaf v. Commonwealth,* 220 Va. 429, 258 S.E.2d 574 (1979) (conviction for carrying concealed weapon in purse upheld where woman informed officer, after passing through scanner, that she had gun in bag but did not think carrying it without permit was unlawful).

9. In cross-examination, an officer on the scene acknowledged that appellant never said that he was "going to use that knife out on the street today or tomorrow in case anybody comes up to me and acts smart with me," but appellant's failure to make any such express statement does not negate the inference that could be drawn from his remarks under our standard of review. *See* note 4 *supra.* Indeed, the government's first question on redirect was whether appellant had "specifically indicate[d] to you at what time and date he wanted to use the weapon," to which the officer answered, no.

present intent.[10]

*Affirmed.*

SCHWELB, Associate Judge, dissenting:

The government concedes that Monroe's possession of the K–Bar–Nine knife was not *per se* unlawful. Moreover, Monroe admitted that he intended to use the object as a weapon only in lawful self-defense or in lawful defense of a third party. If he or a third party were never attacked, then his conditional intent to use the knife as a weapon would never be carried out. If an attack of sufficient severity were made on him or on a third person, then the use of the knife with a proportionate amount of force would ordinarily be legal. Under these circumstances, it is difficult for me to believe that Congress intended to criminalize the possession of an intrinsically lawful object solely because of the possessor's hypothetical future intent to use that object lawfully as a weapon, which future intent would only come into play in the event of an unlawful assault by another. *Cf. Commonwealth v. Sampson,* 383 Mass. 750, 755–56, 422 N.E.2d 450, 453 (1981) (subjective intent to use device as weapon does not bring it within licensing requirements).

There generally being no legitimate use for pistols or other handguns, decisions involving such weapons, *see, e.g., Strong v. United States,* 581 A.2d 383 (D.C.1990); *Logan v. United States,* 402 A.2d 822 (D.C.1979); *Mitchell v. United States,* 302 A.2d 216 (D.C.1973); *Schaaf v. Commonwealth,* 220 Va. 429, 258 S.E.2d 574 (1979), as well as cases in which the defendant carried or used a knife in a threatening, furtive, or otherwise unlawful manner, *see,*

*e.g., Gilmore v. United States,* 271 A.2d 783 (D.C.1970): *Leftwich v. United States,* 251 A.2d 646 (D.C.1969); *Scott v. United States,* 243 A.2d 54 (D.C.1968); *Degree v. United States,* 144 A.2d 547 (D.C.1958), seem to me to be distinguishable in principle because they do not hold that a future intent to act in a lawful manner criminalizes otherwise permissible activity. In our other cases involving knives, the question whether a future hypothetical intent to use one in self-defense or in defense of a third party renders its possession criminal was not squarely faced or discussed. *See, e.g., Pollen v. United States,* 207 A.2d 114 (D.C.1965); *United States v. Shannon,* 144 A.2d 267 (D.C.1958).

I do not think that we should read a statute as proscribing, (and, incidentally, as authorizing a jail term for) the act of carrying a lawful object with a hypothetical but lawful future intent unless the legislature has plainly and unambiguously made such activity criminal. The rule of lenity "embodies the instinctive distaste against men [and women] languishing in prison unless the lawmaker has clearly stated that they should." *United States v. Bass,* 404 U.S. 336, 348, 92 S.Ct. 515, 523, 30 L.Ed.2d 488 (1970) (citation and internal quotation marks omitted). Section 22–3204, quoted in footnote 1 of the majority opinion, does not expressly say that a future hypothetical intent to utilize an otherwise legal object for self-defense or for defense of a third party converts lawful activity into criminal conduct. Although that is one possible reading—a weapon is something the possessor intends to use as one—I do not think that such a construction is compelled by the statutory language or purpose. Monroe's central theme on appeal is

10. As the dissent correctly notes in footnote 2, we do not reach and take no position on the legal issue there discussed. Appellant makes no argument that an intent to use a weapon solely in lawful self-defense may be a defense under the statute, whether or not the subject of a

special instruction, *cf.* CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA No. 4.815 (3d ed. 1978), nor that the evidence, viewed in light of the applicable standard, can only be read as demonstrating such a limited intent, present or future. *See supra* note 4.

a slightly different one, but I believe that the point I have discussed has been sufficiently preserved.[1]  Accordingly, I respectfully dissent.[2]

---

1.  Monroe seems to concede, improvidently in my view, that possession of the knife with a present intent to use it in self-defense would violate the statute.  Nevertheless, he argues that proof of possession with a future hypothetical intent is insufficient to establish that a crime has been committed.  I agree with his conclusion, albeit for somewhat different reasons.

2.  It is important to note that my colleagues do not believe that the issue discussed in this dissent is properly before us, and that they have therefore not decided that issue.  Maj. op. at 442 n. 10.