Timothy L. **LEWIS**, Appellant,

v.

**UNITED STATES**, Appellee.

No. 99–CM–729.

District of Columbia Court of Appeals.

Submitted July 27, 2000.
Decided Feb. 1, 2001.

Ellen A. Williams, appointed by the court, was on the brief, for appellant.

Wilma A. Lewis, United States Attorney, and John R. Fisher, Mary–Patrice Brown, Thomas Swanton and Alexandre H. Rene, Assistant United States Attorneys, were on the brief, for appellee.

Before SCHWELB, Associate Judge, and BELSON and KING, Senior Judges.

KING, Senior Judge:

Timothy L. Lewis appeals from a conviction for attempted carrying of a dangerous weapon,[1] contending that the trial court erred in denying his motions to suppress physical evidence and statements, and that the evidence was insufficient to sustain the conviction. We affirm.

### I.

At approximately 9:40 in the morning on Wednesday, June 3, 1998, Lewis entered the lobby of the Alcohol, Tobacco, and Firearms ("ATF") Headquarters at 650 Massachusetts Avenue, Northwest, Washington, D.C. United States Federal Protective Service Officer L.M. Goltry, asked Lewis whether he could be of assistance. Lewis, who was thirty-seven years old at the time, replied that he was the director of the ATF in the 1970s and that he wanted to retrieve his credentials and identification from the current director. Officer Goltry's suspicions were aroused by that response, so he asked Lewis to produce identification and to step outside the Headquarters. Once outside, Officer Goltry asked Lewis: "Do you have any weapons on you, or anything that is going to harm me." Lewis replied that he had a knife. Officer Goltry then conducted a frisk and felt a hard object he believed to be the knife in Lewis's back pants pocket. A closed knife was removed from Lewis's

pants and he was taken into custody. After a bench trial, Lewis was convicted of attempted carrying of a dangerous weapon. This appeal followed.

### II.

#### A.

Lewis first contends that the trial court erred in denying his motion to suppress his statements and the knife, claiming that Officer Goltry lacked probable cause to search or question him and that he was coerced into making the inculpatory statement. "In reviewing a trial court order denying a motion to suppress, the facts and all reasonable inferences therefrom must be viewed in favor of sustaining the trial court ruling." *Peay v. United States,* 597 A.2d 1318, 1320 (D.C. 1991) (en banc). The trial court's conclusions of law, on the other hand, are independently reviewed by this court under a *de novo* standard. *See Holt v. United States,* 675 A.2d 474, 478 (D.C.1996). Whether Officer Goltry had probable cause to search is ultimately a question of law. *See United States v. Watson,* 697 A.2d 36, 38 (D.C.1997).

Officer Goltry asked Lewis to produce identification and inquired of Lewis: "Do you have any weapons on you, or anything that is going to harm me." Such questioning, without more, constitutes only a consensual encounter.[2] *See United States v. Barnes,* 496 A.2d 1040, 1044 (D.C. 1985); *see also Ware v. United States,* 672 A.2d 557, 561 (D.C.1996). Voluntary responses offered by someone during a consensual encounter with the police are admissible in a criminal prosecution. *See Kelly v. United States,* 580 A.2d 1282, 1285–86 (D.C.1990) (quoting *Florida v. Royer,* 460 U.S. 491, 497, 103 S.Ct. 1319,

---

1. D.C.Code §§ 22–103, –3204(a) (1996).

2. Officer Goltry never touched Lewis while leaving the building and never removed any of his weapons from their holsters. Additionally, defense counsel acknowledged that it would be reasonable for Office Goltry to ask Lewis whether he was armed for the officer's own protection.

75 L.Ed.2d 229 (1983)). Therefore the trial court properly denied the motion to suppress the statements made to Officer Goltry. Once Lewis admitted that he was armed, the requisite probable cause to search, and ultimately arrest, existed. *See Bsharah v. United States*, 646 A.2d 993, 996 (D.C.1994). Because the search was valid, the fruits of that search were admissible. *See id.* at 997.

**B.**

■ Lewis also contends that the evidence was insufficient for conviction of attempted carrying of a dangerous or deadly weapon. Specifically, he argues that there was no evidence of any intent to do harm. We reject that claim because an "intent to do harm" is not the determinative consideration. Rather, the question is, as discussed below, whether the object was carried for use as a dangerous weapon.

■ The standard of review for a challenge to the sufficiency of the evidence in a criminal case is firmly established. The evidence must be viewed in the light most favorable to the prosecution to determine whether a reasonable factfinder could find guilt beyond a reasonable doubt. *See Kelly v. United States*, 639 A.2d 86, 89–90 (D.C.1994). Deference must be given to the factfinder's duty to determine credibility, weigh the evidence, and draw justifiable inferences of fact. *See Abdulshakur v. District of Columbia*, 589 A.2d 1258, 1263 (D.C.1991). Further, in a bench trial, the trial court's factual findings will not be overturned unless they are "plainly wrong" or "without evidence to support [them]." *Mihas v. United States*, 618 A.2d 197, 200 (D.C.1992) (citation omitted). "The evidence must support an inference, rather than mere speculation, as to each element of an offense." *See Head v. United States*, 451 A.2d 615, 622 (D.C.1982). The conviction will be overturned only where there has been no evidence produced from which guilt may reasonably be inferred. *See Jones v. United States*, 716 A.2d 160, 162 (D.C.1998).

■ The statutory provision applicable here states in relevant part: "No person shall carry within the District of Columbia either openly or concealed on or about their person … any deadly or dangerous weapon…." D.C.Code § 22–3204(a) (1996). In order to convict under this provision, where the instrument in question is a knife, the government must prove beyond a reasonable doubt that (1) the defendant carried the knife either openly or concealed; (2) the defendant had the intent to do the acts constituting the carrying of the weapon; and (3) the purpose of carrying the instrument was its use as a dangerous weapon. *See In re S.P.*, 465 A.2d 823, 826 (D.C.1983); *see also Strong v. United States*, 581 A.2d 383, 385–86 (D.C.1990). The government is not required to establish a specific intent to use the weapon for an unlawful purpose. *See In re S.P., supra*, 465 A.2d at 826; *Leftwitch v. United States*, 251 A.2d 646, 648–49 (D.C.1969); *Scott v. United States*, 243 A.2d 54, 56 (D.C.1968).

■ Lewis does not challenge the trial court's findings regarding the first two elements described above. Therefore, the issue before us is whether, under the circumstances, Lewis's purpose in carrying the knife was its use as a weapon. Since not all knives are *per se* dangerous weapons, *see Scott, supra*, 243 A.2d at 56, the ultimate test for determining whether, under the circumstances, a weapon is dangerous or deadly is the purpose for which it is carried. *See Mihas, supra*, 618 A.2d at 201; *Nelson v. United States*, 280 A.2d 531, 533 (D.C.1971); *Leftwitch, supra*, 251 A.2d at 649; *Scott, supra*, 243 A.2d at 56. "The statute … outlaws the carrying of an otherwise useful object where the surrounding circumstances, such as the time and place the defendant was found in possession of such an instrument, or the alteration of the object, indicate that the possessor would use the instrument for a dangerous purpose." *Scott, supra*, 243 A.2d at 56. Even if the weapon has not

been altered, the design or construction itself is relevant. *See Monroe v. United States*, 598 A.2d 439, 441 (D.C.1991) (quoting *In re S.P., supra*, 465 A.2d at 826). An object's inherently dangerous design or the fact that the object need not be altered for effectiveness as a weapon, when combined with the surrounding circumstances, can be the determining factor. *See Scott, supra*, 243 A.2d at 56 (an instrument "may be dangerous in its ordinary use as contemplated by its design and construction"). *Cf. Strong, supra*, 581 A.2d at 386 (inoperable air gun, even though intended to frighten others, did not constitute a dangerous weapon); *Mackey v. United States*, 451 A.2d 887, 889 (D.C. 1982) (machete-type knife in defendant's waistband constituted a dangerous weapon).

■ Among the surrounding circumstances this court has considered material in determining the intended use of the instrument has been the conduct of the defendant immediately prior to arrest. *See Monroe, supra*, 598 A.2d at 441. "Moreover, in the absence of any explanation from defendant, the conceivable legitimate reasons for carrying such an instrument in that setting are a proper subject of inquiry." *Clarke v. United States*, 256 A.2d 782, 786 (D.C.1969); *see also In re S.P., supra*, 465 A.2d at 826. In short, when determining whether the government has met its burden, the court must ordinarily consider both the nature of the knife itself, and the circumstances under which it was carried. While in some circumstances one factor or the other might be decisive,[3] we will review both factors together. In this case, we are satisfied, upon analysis of those factors, that the trial court could find, beyond a reasonable doubt, that the knife was carried as a dangerous weapon.

First we examine the nature of the knife itself. The instrument is a folding knife with a blade three and seven-eighths inches long made of steel.[4] The base of the blade is approximately one inch wide which gradually tapers to form a fine point. The blade appears to be sharpened on one edge, without serration, from shank to tip. The point, however, unlike the rest of the blade, appears to be sharpened on both sides. The knife has no other attachments and the blade is longer than an ordinary Swiss Army knife or pocket knife.[5] The curved handle of the knife is approximately five inches long, with a notch on the one side of the handle into which the blade folds. This notch is approximately one inch from the base of the blade and would appear to be convenient for the placement of the user's forefinger to provide a strong grip for either an upward thrust or a downward slash. Thus the knife recovered from Lewis can not be described as a friendly-looking instrument. Indeed, the trial court observed, "a knife of that type normally doesn't have any legitimate use."

Furthermore, the surrounding circumstances present at the time of the arrest, properly considered, support the trial court's finding that Lewis carried the knife for the purpose of using it as a dangerous or deadly weapon. Lewis's conduct at the ATF Headquarters was very suspicious and potentially life threatening. He claimed to be seeking the return of his credentials and identification and, further, that he had been the former director of the Bureau in the 1970s when he would not have been more than a teenager. He was carrying, concealed in his pocket, a knife nearly nine inches long when opened. Such a large knife normally has no legitimate purpose for a visitor in a government

---

**3.** We express no view whether or not each factor, considered separately, would be sufficient to establish the offense.

**4.** The knife itself was not before the trial court; however a photograph of the knife was

offered and accepted into evidence. That photograph is part of the record on appeal.

**5.** These facts were undisputed in the trial court.

office building. *See, e.g., Scott, supra,* 243 A.2d at 56 (defendant had no legitimate purpose for carrying a folding knife ten inches long with a blade four and one-half inches long in a movie theater).

In addition, although it was Lewis's prerogative not to testify, *see Malloy v. Hogan,* 378 U.S. 1, 7–8, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964), there is nothing in the record, and nothing was said by Lewis at the scene, which would indicate he had an innocent purpose for carrying the knife, such as its use for recreational purposes, as a tool, or as being necessary to his employment. *See Monroe, supra,* 598 A.2d at 441 (failure of arrestee to provide innocent explanation for carrying knife is a factor to be weighed in determining whether the knife was carried as a dangerous weapon). Finally, Lewis told the officer that he had the knife in response to the officer's question: "Do you have any weapons on you, or anything that is going to harm me." Arguably, by his response to that question, Lewis considered the knife to be something more than a work-related tool or simple utility knife.[6] Therefore, we are satisfied that, taking into account both factors, the trial judge could properly find that no innocent reason for carrying the knife existed. *See Clarke, supra,* 256 A.2d at 786.

Our conclusion is bolstered by our decisions in other cases. For example, under similar circumstances, we affirmed a conviction of carrying a dangerous weapon where the defendant had entered a government building carrying a knife with a six and one-eighth inch blade and handcuffs in his briefcase. *See Monroe, supra,* 598 A.2d at 441. As in this case, the defendant in *Monroe* informed the security guards that he was carrying a weapon; however, in *Monroe* the defendant volunteered that he had the weapon before he was asked. *See id.* at 440. The *Monroe* court held:

> A reasonable juror could have found that the design of the knife (over ten inches long with a blade over six inches), the time, place, and conduct of appellant in bringing the knife into a government office, appellant's failure to state to the officers any other purpose for carrying the weapon but its use as a weapon, and evidence that appellant knew how and was prepared to use the knife as a weapon, [specifically, appellant's statement to the officers that he used the weapon for protection and in his employment as a bodyguard,] all combined to justify the conclusion that appellant's intent in carrying the knife was for use as a dangerous weapon.

*Id.* at 441.

Finally, there is support in our case law that a weapon with a blade smaller than four inches can constitute a dangerous weapon under D.C.Code § 22–3204(a).[7] *See, e.g., Coleman v. United States,* 619 A.2d 40, 48 (D.C.1993) (buck knife with a three and one-half inch blade formed the basis of conviction for carrying a dangerous weapon); *Mihas, supra,* 618 A.2d at 199 (carrying a dangerous weapon conviction affirmed for a paring knife with a blade two and three quarters inches long used to threaten victim).

In sum, Lewis was attempting to enter a government building with a concealed knife and the explanation he gave for his presence was highly dubious. He disclosed that he was carrying the knife only after he was asked whether he had any weapons or harmful objects and he offered no innocent explanation regarding the reason he was carrying it. Based on these

---

6. We note that the situation may have been worse for Lewis if he had not informed the officer about the knife after the officer's inquiry. However, it is precisely at this point that one would naturally expect Lewis to offer some innocent explanation for carrying the weapon, if there was one.

7. Under a separate provision it is unlawful to possess, "with intent to use unlawfully against another," a knife with a blade longer than three inches. D.C.Code. § 22–3214(b) (1996).

factors, we conclude that the trial court could properly find, beyond a reasonable doubt, that Lewis carried the knife for use as a dangerous weapon.

### III.

Accordingly, for the reasons stated, the judgment of conviction is

*Affirmed.*