BLACKBURNE-RIGSBY, Associate Judge,
dissenting:
While it may well be that the Department of Motor Vehicles (“DMV”) failed to conduct an adequate market survey in accordance with the procedural requirements of the Procurement Practices Reform Act of 2010 (“PPRA”)[1] to support the challenged “minimum needs” itemized in its solicitation for new driver’s licenses, thereby warranting a remand, I cannot agree with the majority’s legal analysis and proposed framework for the Contract Appeals Board’s (“Board”) review of agency solicitations going forward.[2] The majority’s opinion departs not only from the Council of the District of Columbia’s (“D.C. Council” or “Council”) legislative intent, but also from the Board’s own interpretation of its standard of review, and, as the majority readily concedes, from government procurement norms in the federal context.[3] A full reading of the legislative history of the PPRA does not support such a rigid interpretation of “de novo” review. Rather, as explained more fully below, a “dual-inquiry,” whereby an agency is accorded deference to its discretionary decision-making, but where the Board reviews “anew” the agency’s adherence to the procedural safeguards of the PPRA, is a more reasonable interpretation of “de novo” review in this administrative context. Such a “dual-inquiry” review is “searching and careful,”[4] and not toothless, and is consis *590 tent with how some courts have previously-interpreted “de novo” review in similar administrative contexts. Therefore, I must respectfully dissent.
Relying primarily upon Black’s Law Dictionary, the majority adopts a rigidly literal interpretation of the Board’s “de novo” review in the context of pre-award bid protests upder the PPRA. See D.C.Code §§ 2-360.03(a), -360.08(d); 27 DCMR § 101.7. Such a rigid reading of “de novo” review, which authorizes the Board to reject specifications within a solicitation as not reflective of the agency’s “actual minimum needs,” even if the agency presented a reasonable basis for their inclusion,[5] is inconsistent with the legislative intent of the statute. The D.C. Council recognized in adopting the PPRA that agencies have subjective discretion in making procurement decisions. Further, one of the fundamental goals the Council had in revising the District’s procurement statute was to promote increased efficiency, along with maximizing competition, in the procurement process. See D.C. Council, Report on Bill 18-610, the “Procurement Practices Reform Act of 2010” at 5 (Oct. 21, 2010) (stating that in order for procurement officials to make the most strategic purchasing decisions, procurement rules must remain flexible). For these reasons, and others, I disagree with the majority that “de novo” review in this context should be so narrowly and rigidly construed. An alternative interpretation of the “de novo” review language in the PPRA, recognizing the nature of the dual-inquiry that the Board must undertake, is more reasonable, based on a holistic, full reading of the legislative purposes of the District’s procurement statute.
I. Standard of Review
To begin, there is no dispute that the issue in this case is the appropriate interpretation of the term “de novo” as it pertains to the Board’s review of agency procurement decisions under the PPRA and *591 associated regulations. See D.C.Code §§ 2-360.03(a), -360.08(d); 27 DCMR § 101.7. However, I must disagree with the majority’s conclusion that the Board’s review must be nondeferential, and I further disagree with the majority’s presumption that a rigidly literal interpretation of “de novo” review is the only way to accomplish the PPRA’s “pro-competition bent.” Given the importance of the Board’s standard of review in effectuating the legislative intent of the PPRA, I believe our analysis must necessarily go further.
Although it is well-established that this court will look first to the “plain meaning” of a statute in determining whether the language is “clear and unambiguous,” we have likewise cautioned that we “must not make a fetish out of plain meaning nor should [we] make a fortress of the dictionary.” District of Columbia v. Place, 892 A.2d 1108, 1111 (D.C.2006) (citations and internal quotation marks omitted). Thus, we “may refuse to adhere strictly to the plain language of a statute in order to effectuate the legislative purpose as determined by a reading of the legislative history or by an examination of the statute as a whole.” Id. (quoting Peoples Drug Stores, Inc. v. District of Columbia, 470 A.2d 751, 754 (D.C.1983) (en banc)). Consequently, as this court has previously cautioned, “even where words of a statute have a ‘superficial clarity,’ a review of the legislative history or an in-depth consideration of alternative constructions that could be ascribed to statutory language may reveal ambiguities that the court must resolve.” Peoples Drug Stores, supra, 470 A.2d at 754 (emphasis added). A review of the PPRA as a whole, along "with its legislative history, reveals several concerns with maintaining a rigid, dictionary definition of “de novo” review in the context of bid protests that the majority has failed to address or consider.
II. The PPRA and its Legislative History
To clarify, the present statutory language describing the Board’s standard of review as “de novo” originated in the PPRA’s predecessor, the District of Columbia Procurement Practices Act of 1985 (“1985 Act”), and was not new language added to the revised PPRA to support— what the majority characterizes as — its inherently “pro-competition” bent. Specifically, the 1985 Act established the current Board and stated that, under Section 903 (Jurisdiction of the Board), “[t]he Board shall be the exclusive hearing tribunal for, and shall have jurisdiction to review and determine de novo ... [a]ny protest of a solicitation or award[,]” and, under Section 908 (Protest of solicitations or awards to the Board), “the Board shall promptly decide whether the solicitation or award was in accordance with the applicable law, regulations, and terms and conditions of the solicitation. The proceeding shall be de novo.” D.C. Council, Report on Bill 6-191, “District of Columbia Procurement Practices Act of 1985” at 56, 60 (Oct. 10 1985). These two sections of the 1985 Act track almost verbatim with the current statutory language found in D.C.Code § 2-360.03(a) and D.C.Code § 2-360.08(d), respectively, and which forms the basis for the majority’s holding.[6] Rather than the “de novo” review language being inextricably linked to the statutory goal of promoting competi *592 tion, as the majority contends, it is wholly unclear from reading the nearly thirty-year old statutory provisions just what extent of “de novo” review authority the legislature actually intended the Board to have in reviewing bid protests.[7] In fact, nowhere in the 1985 Act legislative report does the D.C. Council explain its “de novo” word choice. Rather, on the issue of establishing the Board, the Council observed that the Board’s predecessor was “established by executive order, and the functions for the Board as provided in the bill are similar to the current functions and authority of the [predecessor] Board ...” Id. at 5.
The current PPRA was proposed in 2010 as a direct response to significant flaws identified in the District’s procurement system.[8] See Report on Bill 18-610, supra, at 3. Although one of the systematic flaws recognized was the need for improved fairness and “accountability and oversight,” as indicated by the majority, the D.C. Council also identified a second, equally fundamental interest: the need to improve government efficiency in the procurement process. Id. at 4.[9] The Council noted that “fairness and efficiency are not inherently opposing interests,”' but conceded that “an ever-increasing number of procedural steps to ensure fairness imposes limits on the push towards greater efficiency ...” Id. at 5. Accordingly, the Council sought to balance, in the PPRA, increased procedural steps to guarantee a “fair” procurement process with “flexible” procurement rules that “allow procurement officials to make the most strategic purchasing decisions — i.e., those that are in the best interest of the government as a purchaser[,]” recognizing that “[d]ifferent goods and services require different procurement structures, methods, and time-frames.” Id. (emphasis added). The Council further acknowledged and, in fact, endorsed the notion that “most procurement decisions involve a significant degree of subjective decision-making, either in the description of goods or services needed, the nature of a contract vehicle to be used, or the weight given to various ranking criteria.” Id. (emphasis added). The Council explained that “[t]he need for subjective decision-making should not be cause for concern [as] [independent decision making is part of all procurements and a fundamental tenet of the most successful procurement organizations[,]” referring to the Government Accountability Office (“GAO”) and the federal procurement system. Id. at 5 n. 2 (emphasis added).
In fact, in revising the District’s procurement law, the D.C. Council looked to *593 the findings of the GAO on the District’s procurement system, see id. at 7, an agency whose expertise the majority perfunctorily discarded as irrelevant to construing the District’s statute.[10] The Council further endorsed the GAO’s statement that “one of the fundamental challenges to the federal procurement system” is that “[glovernment contracting officials [are] confronted with numerous mandates that left little room for the exercise of sound business judgment, initiative, and creativity in satisfying the needs of their agency customers.” Id. at 5 n. 2 (emphasis added). Accordingly, the Council concluded that “[a] good procurement system will rely on well-qualified decision-makers and empowers those individuals to make strategic buying decisions.” Id. (emphasis added). In this regard, the majority’s rigidly literal interpretation of “de novo” review eliminates deferential consideration of the discretionary decisions that agency officials have the expertise and authority to make. Further, the majority decision ignores the reality that most procurement actions involve some discretionary and subjective decision-making, which is within the purview and responsibility of agency officials.[11]
Illustrating the D.C. Council’s goal in seeking to improve procurement efficiency through recognition of agency discretion, the PPRA legislative report actually recommended that the D.C. Council, which then may have been the only “state-level legislature authorized to routinely disapprove contraets[,]” limit its own power to review and reject contracts, because, while such a review clearly increases oversight over the agencies, it “place[d] an increased burden on the [District agencies] by adding a potentially lengthy step to the procurement process.” Id. at 20.
Thus, in addition to the “central purposes” of the PPRA identified by the majority,[12] there are also competing “central purposes” within the PPRA intended to “maximize efficiency.” For example: (1) “promotfing] efficiency and eliminating] duplication in the District government procurement organization and operation to reduce costs;”[13] (2) “providing] increased economy in procurement activities and maximizing], to the fullest extent practicable, the purchasing power of the District government;”[14] and (3) “providing] for timely, effective, and efficient service to *594 District agencies and individuals doing business with the District government[.]”[15]
III. Discussion
Based on the legislative history of the PPRA, the majority’s rigid interpretation of “de novo” review is in conflict with a holistic reading of thefull legislative intent of the PPRA for two reasons.

A. The Agency’s Right to Make “Subjective” Procurement Decisions

First, an interpretation of “de novo” review that rejects according deference to the agency’s discretionary procurement decisions made within its expertise is in-congruent with the D.C. Council’s recognition that “most procurement decisions involve a significant degree of subjective decision-making,” and the Council’s further endorsement that “[ijndependent decision making” by a procuring agency is a “fundamental tenet of the most successful procurement organizations.” Report on Bill 18-610, supra, at 5 & n. 2. This is consistent with federal procurement case law, which recognizes that “[cjontracting officers are entitled to exercise discretion upon a broad range of issues confronting them in the procurement process ... [and] [f]or that reason, procurement decisions invoke highly deferential rational basis review.” Savantage Fin. Servs., Inc. v. United States, 595 F.3d at 1282, 1286 (Fed.Cir.2010) (citations, internal quotation marks, and original brackets omitted).
Given the D.C. Council’s expressed legislative intent in enacting the PPRA, we must do a more probing analysis, which goes beyond Black’s Law Dictionary, and examine whether conferring a nondeferen-tial review to the Board is functionally appropriate in the context of bid protests. In doing so, it is helpful to consider, fundamentally, the types of issues typically reviewed under a “de novo” versus an “abuse of discretion” standard.[16]
By way of analogy, in the criminal context, we review sufficiency of the evidence challenges “de novo” because the evidence “objectively speaking” lends itself to a specific result. The evidence is enough to convict or it is not; there is no room for discretion on the legal question of whether the evidence was enough to convict the individual of the charged offense.[17] On the other hand, admissibility of evidence determinations are reviewed under an abuse of discretion standard because we acknowledge and respect the discretionary aspect of assessing whether something is more probative than prejudicial under the circumstances of each case, and we allow the trial court the flexibility to make that choice, within certain parameters. Like *595 wise in the civil context, we review motions to dismiss and motions for summary judgment “de novo” because the party has either pleaded all of the elements of the claim or raised an issue of material fact, or has not; there is no in-between.[18]
Simply put, the flaw in the majority’s interpretation of “de novo” review in this context is that it permits the Board to attempt to “objectively” determine the “actual minimum needs” of the DMVs solicitation for new driver’s licenses. The underlying assumption is that there is only one correct answer as to what constitutes an agency’s “actual minimum needs” for any given solicitation. Yet, in reality, the agency must utilize its expertise and discretion, and make policy determinations in identifying and developing its “minimum needs.” The legislative history of the PPRA recognizes that agencies have subjective decision-making authority over procurement matters. See Report on Bill 18-610, supra, at 5.
Moreover, the D.C. Council’s characterization of an agency’s procurement decisions as “discretionary” in nature is reasonable. The agency — not the Board — has the expertise and the subjective decision-making authority on behalf of the District government to determine, within reason, the District’s “minimum needs” for any given procurement solicitation. Thus, it is not for the Board to second guess such determinations unless the agency’s decision was lacking in rationale.[19] See Savan-tage Fin. Servs., Inc., supra, 595 F.3d at 1286. For essentially the same reason, “competitors do not dictate an agency’s minimum needs, the agency does .... And determining an agency’s minimum needs is a matter within the broad discretion of agency officials....” Id. (citations and internal quotation marks omitted).
Under the majority’s proposed legal framework, will the Board be allowed to reject an agency’s procurement specification for a new asphalt road because the Board determines that asphalt is not an “actual minimum need” when a brick road would do just as well? Or, could the Board reverse a solicitation embodying the District’s policy preference to power District government buildings via solar panels because the Board determines it is not a “minimum need” when clean coal would do just as well?
In the case at hand, putting aside for the moment the sufficiency of the market research study conducted by the DMV in this case, had the DMV determined, following required procurement procedures, that it “preferred” to move the District toward polycarbonate cards, is the Board free to discard the DMVs requirement as unnecessary and not an “actual” minimum need? Does the majority’s opinion mean that the DMV cannot make a policy choice regarding driver’s licenses? This result seems to run counter to one of the essential policy making functions of the government.[20] Cf. Casco Marina, supra, note 16, *596 834 A.2d at 81 (conferring immunity onto government actions exhibiting a discretionary function because it is a matter of making a policy choice).

B. The PPRA was Intended to Promote Competition AND Increase Efficiency in the District of Columbia’s Procurement Process

Second, the majority’s interpretation of “de novo” review undercuts one of the PPRA’s “central” goals of increasing efficiency in the procurement process. The legislative history underscores this point by noting that the D.C. Council sought to remove or limit its own authority to review certain contracts due to the hindrance on efficiency. See Report on Bill 18-610, supra, at 20-21. As the majority notes, the GSBCA had a “de novo” — like standard of review, see ante at 583 n. 45, (although the GSBCA still accorded some deference to the agency), but this standard was modified into a more explicit deferential standard by 1996, the year the GSBCA’s authority was terminated. See Nat’l Defense Authorization Act for Fiscal Year 1996, Pub.L. No. 104-106 (Feb. 1996). What the majority does not note, however, is that, in large part, the reason for this change in review standard was because the GSBCA’s “de novo”-like review caused higher instances of excessive litigation and sustain rates than the GAO,[21] and that this contributed greatly to Congress’s decision to revoke the GSBCA’s jurisdiction. See Keyes, supra note 21, at 754 n. 2; Jonathan R. Cantor, Note, Bid Protests and Procurement Reform: The Case for Leaving Well Enough Alone, 27 Pub. Cont. L.J. 155, 171 (1997) (“The ... Committee’s ... proposal, to eliminate the GSBCA’s de novo review, contributed to Congress’s decision to revoke the GSBCA’s bid protest jurisdiction....”). The majority’s adoption of an even more rigid standard of review than the GSBCA undercuts the D.C. Council’s intent to promote efficiency within the procurement process.
Athough the D.C. Council, in enacting the PPRA, found fault with many issues pertaining to the District’s previous procurement statute, concern about the strength of the Board’s reviewing power was not one of them. In the PPRA legislative report, the D.C. Council conducted a systematic assessment of the weaknesses within the 1985 procurement act. When it came to the Board, however, the D.C. Council explicitly stated that it believed “the current protest procedures in the *597 PPA [i.e., 1985 Act] are sufficient to handle cases deemed frivolous.” Report on Bill 18-610, supra, at 19. In fact, reading the report, it appears that the D.C. Council’s main concern with the Board was not that its review lacked bite, as the majority has opined, but rather the complete opposite— the D.C. Council sought to place more measures in place to restrict vendors from bringing forth “frivolous” claims that would hamper the procurement process. Id.[22]
This legislative history rebuts the majority’s assertion that the PPRA intended for the Board to have a rigid and wholly non-deferential standard of review, and that the Board’s current review practices, which give deference to agencies are erroneous. Instead, the D.C. Council explicitly stated that it found the current protest procedures (and therefore the Board’s interpretation of its own standard of review, which gives deference to the agency) to be adequate, and that — if anything — the D.C. Council sought to prevent more vendors from challenging agency solicitations. The majority’s holding, which overrides the Board’s interpretation of its own standard of review and instead requires it to review agency solicitations without conferring deference to the agency, contradicts the Council’s expressed intent and hinders the goal of preventing vendors from bringing “frivolous” protests.[23]

C. Historical Acceptance of an Alternative Interpretation of “De Novo” Review

Of course, I do not mean to suggest that we should read the statute as if the words “de novo” do not exist. “Each provision of the statute should be given effect, so as not to read any language out of a statute whenever a reasonable interpretation is available that can give meaning to each word in the statute.” Providence Hosp. v. District of Columbia Dep’t of Emp’t Servs., 855 A.2d 1108, 1114 (D.C.2004) (citations and internal quotation marks omitted). What I am suggesting, however, is an alternative interpretation of “de novo” review, which gives effect to the statutory purpose by deferring to an agency’s exercise of its discretion while ensuring that procedural safeguards are enforced, is reasonable here. Federal courts have interpreted federal administrative statutes requiring “de novo” review, or an equivalent type of review, to require a reviewing body to give deference to an agency’s reasonable discretionary decision, while requiring adherence to procedural safeguards.
In Board of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cnty. v. Rowley, 458 U.S. 176, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982), the Supreme Court was called upon to interpret the appropriate standard for reviewing challenges arising under The Education of the Handi *598 capped Act (“Education Act” or “Act”), then-20 U.S.C. § 1401 et seq. (1976 ed. and Supp. IV). The Act provided federal assistance for educating children with disabilities, and required state education boards receiving assistance to craft an “individualized educational program” (“IEP”) for each disabled child, consisting of programming and teaching goals specific to the unique characteristics of the. child. Id. at 181-82, 102 S.Ct. 3034. Complaints pertaining to an IEP must be filed with the state’s educational agency but can be appealed to any state or federal court, whereby the reviewing court shall, pursuant to the Act, “receive the record of the state administrative proceedings, shall hear additional evidence at the request of a party, and basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate.” Id. at 183, 204-05, 102 S.Ct. 3034 (citation, internal quotation marks, and brackets omitted). On petition for writ of certiorari, the Supreme Court concluded that the statutory language, although not specified as a “de novo” review, nonetheless was more in line with the de novo standard. Id. at 205-06, 102 S.Ct. 3034. However, the Court explained that this was, by “no means[,] an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review.” Id. at 206, 102 S.Ct. 3034. Rather, given the “elaborate and highly specific” procedural safeguards of the Act, id. at 205, 102 S.Ct. 3034, the Court reasoned that “the legislative conviction that adequate compliance with the procedures prescribed would in most cases assure much if not all of what Congress wished in the way of substantive content in an IEP.” Id. at 206, 102 S.Ct. 3034 (emphasis added).
Subsequently, some federal courts have characterized this review articulated by the Supreme Court as a “modified de novo” standard, see Karawia v. United States Dep’t of Labor, 627 F.Supp.2d 137, 144 (S.D.N.Y.2009), whereby the review, while “de novo, [ ] is tinged with a significant degree of deference to the state educational agency, as [the courts] are essentially acting in an administrative law-style capacity.” Id. In practice, this “modified de novo” standard means that the reviewing court shall assess two questions: “(1) whether the state complied with the procedural requirements of the [Act], and (2) whether the challenged IEP was ‘reasonably calculated to enable the child to receive educational benefits.’ ” P. ex rel. Mr. & Mrs. P. v. Newington Bd. of Educ., 546 F.3d 111, 118 (2d Cir.2008) (emphasis added); see also Rowley, supra, 458 U.S. at 206-07, 102 S.Ct. 3034. The first question is an objective one pertaining to procedural safeguards (much like a “ministerial act” in the context of government immunity, see supra note 16), and therefore obviously can be reviewed “de novo” by a reviewing tribunal. See, e.g., Rowley, supra, 458 U.S. at 206 n. 27, 102 S.Ct. 3034. However, the second question — e.g., whether the state board “reasonably calculated” the IEP to enable the child to be educated in “the least restrictive environment” — is essentially a fact-specific, and therefore deferential, inquiry. P. ex rel. Mr. & Mrs. P., supra, 546 F.3d at 119-20. Accordingly, as the Supreme Court held, “once a court determines that the requirements of the Act have been met, questions of methodology are for resolution by the States.” Rowley, supra, 458 U.S. at 208, 102 S.Ct. 3034 (emphasis added). This approach is essentially consistent with the District of Columbia’s Contract Appeals Board’s current approach, as specified in Protest of Koba Associates, Inc., DCCAB No. P-325A, 1993 WL 763610 (Mar. 12, 1993), where the Board characterized its own standard of review as the following:
*599 [I]n applying the de novo standard of review, [the Board] do[es] not presume that the agency’s actions were correct ... the substantive standards which [the Board] will apply are that [it] will not take issue with an agency’s narrowing of competition in pursuit of legitimate agency needs, but ... will overturn those requirements that improperly limit competition.... Of course, [the Board] will accord deference to the agency’s technical judgment but will not slavishly follow it where the result is lacking in justification.
Id. at *6 (emphasis added) (citations omitted).
The second example is even more analogous, even though it is in the post-contract award stage, pertaining to the Contract Dispute Act. (“CDA”) of the federal government. In Todd Construction, L.P. v. United States, 88 Fed.Cl. 235 (2009), the Court of Federal Claims was asked to interpret the then-CDA provision, 41 U.S.C. § 609(a)(3) (1994 Supp.), regarding the appropriate judicial review of challenged performance evaluations of vendors who have a contract with the United States government. Id. at 245. Section 609(a)(3) explicitly stated that the court was to review such evaluations “de novo.” However, the Federal Claims court did not read the language so literally and instead created two distinct sets of requirements. Id. at 246. The court explained that:
One [set of inquiries related to performance evaluations] is strictly procedural: there are a number of acts that are not within the discretion of the contracting officer. She must prepare an evaluation, using a particular form, at a particular time. Where an unsatisfactory evaluation is contemplated, she must confer with the contractor, send a notice of intent to issue an unsatisfactory interim rating, allow written comments by the contractor, include them in the report, et cetera. The Court is fully capable of reviewing whether these requirements were satisfied or not on a de novo basis. The Court possesses the capacity to determine whether a conference was held or whether a notice of intent to issue an unsatisfactory rating was sent in a timely fashion.
But the second issue is a different matter. The regulations contemplate that the contracting officer and the reviewing officer will produce a performance evaluation that is “accurate” and “fair.” That is, although the issuance of a performance evaluation that is “accurate and fair” can be expected “as a matter of right” by the contractor; the determination of the proper rating (ie., what is “accurate and fair”) is a matter for the agency to decide within broad parameters.
The choice of a particular rating to assign is necessarily subjective and is within the sole purview of the Government. Thus, the production of an accurate and fair performance evaluation rating requires the exercise of the contracting officer’s judgment[.]
Id. at 246-47 (italics in original).
These two examples of an alternative interpretation of “de novo” review within the context of administrative statutes are consistent with a holistic reading of the full legislative intent underlying the PPRA.[24] See Report on Bill 18-610, supra, *600 at 5. Accordingly, the PPRA’s “de novo” review should be interpreted as requiring a “dual-inquiry,” balancing the need for maximizing competition and fairness and transparency, with efficiency and the due recognition that government agencies are qualified, authorized, and required to make certain discretionary and subjective choices in the context of procurement decisions.
IY. The “Dual-Inquiry” Interpretation of “De Novo” Review
Under a “dual-inquiry” interpretation of the “de novo” language found in the PPRA, the determination of whether a District agency has satisfactorily engaged in. the mandated procurement procedures under the PPRA and associated regulations is an objective question, which is appropriate for the Board to analyze on a “de novo,” or nondeferential, basis.. These mandated procedural requirements include, among many others: (1) the agency shall conduct market research, (2) its solicitations shall contain specifications and purchase descriptions, see 27 DCMR §§ 2500.2, 2500.3, and (3) each purchase description shall include characteristics such as “common nomenclature;” “kind of material;” “dimensions, size, or capacity;” etc. 27 DCMR § 2501.5. In reviewing a challenge to the agency’s compliance with the procedural safeguards of the PPRA, the Board shall remand the solicitation if the bidder demonstrates a “prejudicial violation” of the PPRA or associated regulations. Impresa, supra, note 3, 238 F.3d at 1333.
The determination of whether an agency has satisfactorily articulated the “minimum needs” for a solicitation, however, is a deferential and subjective inquiry because the agency has broad discretion within a range of acceptable,' reasonable discretionary choices. Therefore, in applying this dual-inquiry, the Board must affirm an agency’s determination of its “minimum needs” stipulated within a solicitation, so long as there is a rational basis supporting the minimum needs, along with supporting evidence, and the agency has satisfactorily complied with the mandated procurement procedures. This approach is consistent with the Board’s own interpretation of its review standard, see Koba Assocs., Inc., supra, at *6, and with established practices within the federal procurement system. See, e.g., Savantage Fin. Servs., Inc., supra, 595 F.3d at 1286. This dual-inquiry better balances the competing policy goals of the PPRA, and recognizes the importance of giving agencies discretion over procurement decisions while also requiring compliance with procedural requirements designed to foster fairness, efficiency, and competition.
The majority’s observation that the Council identified “implementation” of the previous 1985 Act to be one of the most significant flaws in the District’s procurement system, see Report on Bill 18-610, supra, at 3,[25] reinforces, rather than de *601 tracts, from the “dual-inquiry” framework. As noted, under a dual-inquiry framework, the Board reviews “anew” whether the agency’s solicitation followed all of the procedural safeguards put into place by the PPRA, and the Board on review must ensure that those procedural requirements are vigorously enforced. As the Council itself explained, the failure to follow the procurement procedures presented the biggest challenge to successful implementation of the District’s procurement statute. See Report on Bill 18-610, swpra, at 6-7. Absent from its critique of the District’s procurement system, however, is any indication that the Council sought to curtail the subjective decision-making authority of the agencies in crafting procurement solicitations. On the contrary, the Council specifically endorsed the need for independent decision-making on the part of agencies in fashioning the most flexible and beneficial procurement solicitations. A “dual-inquiry” interpretation of “de novo” review gives the Board the authority to review questions of procedural compliance “searchingly,” yet accords flexibility and deference to an agency’s subjective decision-making on what constitutes its own “minimum needs.”
Therefore, I do not agree with the majority’s interpretation of “de novo” review in coming to its conclusion that a remand is necessary here. I must respectfully dissent.

. See D.C.Code §§ 2-351.01 to -362.02 (2012 Repl.).

. Whether the DMV in this case complied with the procedural requirement to conduct adequate market research, and whether the Board vigorously enforced that and other procedural requirements, are issues that must be decided under the appropriate legal framework. I do not answer these questions here; rather, I dissent from the proposed legal framework on which the majority relies to conclude that a remand in this case is necessary. Contra ante at 585 n. 50.

. See Grumman Data Sys. Corp. v. Widnall, 15 F.3d 1044, 1046 (Fed.Cir.1994) ("Government agencies are entrusted with a good deal of discretion in making procurement decisions .... Therefore, in reviewing procurement decisions, a board may not second guess an agency’s procurement decision and/or substitute its own judgment for that of the government."); Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1332 (Fed.Cir.2001) ("[Cjourts have recognized that contracting officers are entitled to exercise discretion upon a broad range of issues confronting them in the procurement process.” (citations and internal quotation marks omitted)) ("Impresa ”).

. Cf. Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416, 91 S.Ct. 814, 28 *590 L.Ed.2d 136 (1971), abrogated by Califano v. Sanders, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977), where the Supreme Court referenced the nature of its review as "searching and careful” in the context of explaining a deferential standard where "[t]he [reviewing body] is not empowered to substitute its judgment for that of the agency.”

. Although the majority attempts to blunt its definition of “de novo” review by later explaining that "this is not to say” that the Board may give no "recognition” or "weight” to agency expertise reflected in its articulation of its own minimum needs, this "recognition” or "weight” is not equivalent to according legally-binding "deference” to an agency’s decision-making. Ante at 584. The majority’s opinion argues that the "Board’s obligation [is] to determine whether the challenged card specifications in fact reflected the District’s minimum needs,” regardless of whether the challenged specifications were reasonable. Id. at 586 (emphasis added). In contrast, according "deference” to the agency requires that the Board, upon conducting a "searching and careful” review, must affirm the agency's determinations of its own "minimum needs,” so long as there is a rational or reasonable basis for their inclusion, and so long as the agency complies with the procedural requirements and safeguards in the Act. See, e.g., Advanced Data Concepts, Inc. v. United States, 216 F.3d 1054, 1058 (Fed.Cir.2000) (stating that the court must sustain an agency action unless the action does not “evince! ] rational reasoning and consideration of relevant factors”). For this reason, merely giving "recognition” or "weight” to the agency's expertise and discretion in interpreting "de novo” review amounts to a nondeferential standard of review.
The majority also asserts that while the Board’s review "is at every stage de novo, as a procurement moves forward, more agency discretion is built into the process.” Ante at 586. This assertion seemingly contradicts the majority’s interpretation of "de novo” review, and lends support to a dual-inquiry approach, and a less rigid interpretation of the "de novo” review standard in the context of the procurement process.

. See D.C.Code § 2-360.03(a) ("The Board shall be the exclusive hearing tribunal for, and shall review and determine de novo ... [a]ny protest of a solicitation.... ”); D.C.Code § 2-360.08(d) ("[T]he Board shall decide whether the solicitation ... was in accordance with the applicable law, rules, and terms and conditions of the solicitation. The proceeding shall be de novo ....’’); see also 27 DCMR § 101.7 ("The Board shall hear and decide, de novo, all cases under its jurisdiction.”).

. Nor am I persuaded by the majority's argument that the Council must have inherently understood the meaning of the “well-established” term "de novo,” apparently meaning nondeferential review, when it adopted the language in the 1985 Act. Ante at 583-84 n. 46. This is because "de novo” has been interpreted differently by courts in the past, especially in the context of reviewing agency decisions. See infra at 597.

. Areas requiring improvement that the PPRA intended to address included, among others: (1) developing a professional acquisition workforce; (2) enhancing transparency through an open and transparent process; (3) uniformity of procurement policies; and (4) source selection integrity. See Report on Bill 18-610, supra, at 8-23. These specific areas of improvement were intended to support the twin fundamental goals of the PPRA: fairness and efficiency. Id. at 5.

.Specifically, the Council stated that: "The ability to procure goods and services in a timely and cost-efficient manner ensures that organizations have the resources they need to fulfill their institutional missions. Delays impede performance and often lead to increased costs, limiting the ability of an organization to achieve its mission.” Id. at 4.

. Given that the Council looked to the GAO’s findings on the shortcomings within the District's then-existing procurement statute, the majority perhaps too hastily brushed aside the District’s attempt to argue for an alternative reading of "de novo,” based on the standard of review adopted by the GAO and the former General Services Agency Board of Contract Appeals ("GSBCA”), by asserting simply that the federal frameworks were inapplicable.

. The majority contends that the statutory language ’’[a]ny prior determinations by administrative officials shall not be final or conclusive,” D.C.Code § 2-360.08(d), supports a rigid definition of "de novo” review by the Board. Ante at 582. However, this statutory language is not in conflict with, according deference to the agency’s determination of its minimum needs because the Board clearly retains the authority to reject an agency’s "minimum needs” if there .is no rational basis for their inclusion. See infra at 600.

. Including: (1) "fostering] effective and equitably broad-based competition in the District,]” D.C.Code § 2-351.01(b)(2), (2) "obtaining] full and open competition by providing that contractors are given adequate opportunities to bid[,]” id. at (3), (3) "increase[ing] public confidence in the procedures followed in public procurement,]” id'. at (5), and (4) specifying procurement needs ''in a manner designed to promote competition to the maximum extent possible[,]” 27 DCMR § 2500.3.

. D.C.Code § 2-351.01 (b)(6).

. Id. at (7).

. Id. at (9).

. This court’s cases regarding government immunity also provide us with some guidance. In Casco Manna Dev., L.L.C. v. District of Columbia Redevelopment Land Agency, 834 A.2d 77, 81 (D.C.2003) (“Casco Marina "), we explained why government officials' discretionary actions were conferred immunity, whereas "ministerial” actions by government officials were not. We defined "discretionary acts” as involving the formulation of "policy;” choices that require "personal deliberation, decision, and judgment,” amongst many alternatives. See id. at 81 & n. 7. In contrast, ministerial actions, as explained by the Supreme Court in Berkovitz v. United States, 486 U.S. 531, 536, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988), are those where a statute or regulation "specifically prescribes a course of action for an employee to follow.”

.Of note, even within the sufficiency of the evidence context, it is well-established that we "defer” to the trial court’s factual findings. See, e.g., Lewis v. United States, 767 A.2d 219, 222 (D.C.2001) ("Deference must be given to the factfinder’s duty to determine credibility, weigh the evidence, and draw justifiable inferences of fact.” (emphasis added)).

.In fact, this concept of deference being accorded to discretionary acts was explained and clarified by this court over thirty-years ago, where we expounded that "[discretion signifies choice.[,]” and that "[t]he concept of 'exercise of discretion’ [therefore] is a review-restraining one.” Johnson v. United States, 398 A.2d 354, 361-62 (D.C.1979). We explained that a review of discretionary decisions must be "supervisory in nature and deferential in attitude.” Id. (emphasis added).

. Of course, the agency must adhere to the procedural procurement guidelines as outlined by the PPRA, such as conducting adequate market research. See 17 DCMR § 2500.2.

. The majority attempts to downplay the impact of its holding by stating that it "merely” intends to hold that "when agencies identify their minimum needs, they must be able to justify them before the Board.” Ante at 585 n. 50. Yet, the opinion later seemingly contra- *596 diets this statement by explaining that "the question before the Board was not whether the DMV’s decision was 'rational,' or reasonable, but whether the decision ... reflected a minimum need — i.e., whether there was no other equally effective methods....” See id. at 588 (emphasis added). Consequently, it is evident that the majority’s opinion requires the agency to do more than "merely” "justify” its minimum needs to the Board. Instead, the majority imposes on the agency the burden of presenting definitive evidence that there were no equally effective alternatives. However, there are many instances where there may be multiple options, none of which are inherently superior to the other. Accordingly, when an agency decides to choose one of those options as a "minimum need,” and presents a reasonable basis for its inclusion, such as, for example, the desire to utilize solar energy over coal or gas, the agency is essentially making a policy decision for the District of Columbia, which is not for the Board to second guess. Cf. Casco Marina, supra, note 16, 834 A.2d at 81.

. According to Government Contracts by W. Noel Keyes, historically, protest sustain rates were fifteen-percent higher for cases going before the GSBCA than the GAO because of the GSBCA's "de novo” standard of review. W. Noel Keyes, Government Contracts 753 (3d • ed.2003). This "de novo” standard also contributed to an "unacceptable” forty five-percent protest rate in all information technology procurements over $25 million. Id. at 754 n. 2.

. In fact, a bill was introduced to require vendors wishing to challenge a contract determination before the Board to place a "protest bond" equivalent to five-percent of the protested contract’s value. See Report on Bill 18-610, supra, at 19. Such a bond would then be forfeited if the protest was deemed to be found without merit. Id. This proposal failed, however, because the Board’s Chief Administrative Judge indicated that it had “not ruled a large number of cases to be frivolous and thus saw the provision as unnecessary.” Id.

. During the public hearing on the PPRA, some Council members "questioned the necessity of the Contract Appeals Board” because "a [B]oard is unusual and that in most states!,] protests are adjudicated by the procurement office.” Report on Bill 18-610, supra, at 32. Again, this contradicts the majority's conclusion that the so-called "plain meaning” of the PPRA’s "de novo” language denoted that the Act intended to grant the Board more review authority over agency procurement decisions.

. In fact, this ''dual-inquiry” is also present in the federal bid protest context notwithstanding that, as the majority notes, there is no statutorily established “de novo” review. As the Federal Circuit explained, “a bid award may be set aside if either: (1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure.” Impresa, supra, note 3, 238 F.3d at *600 1332 (emphasis added). "Accordingly, [in analyzing the first question] the test for reviewing courts is to determine whether the contracting agency provided a coherent and reasonable explanation of its exercise of discretion ... and the disappointed bidder bears a heavy burden of showing that the award decision had no rational basis.” Id. at 1332-33 (citations and internal quotation marks omitted). "When a challenge is brought on the second ground, [however,] the disappointed bidder must show a clear and prejudicial violation of applicable statutes or regulations.” Id. at 1333 (citations and internal quotation marks omitted).

. Implementation issues identified included: (1) "a substantial portion of [procurements] known to be in violation of procurement procedures!,]” (2) "failure to establish a culture of compliance and enforcement of controls that insure compliance^]” and (3) the need to *601 develop a "more robust system of acquisition planning,” increased "accessibility of procurement rules and regulations," and “a more professional, better trained workforce of procurement personnel.” Id. at 6-7 (emphasis added).